THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MOZELL BROWN, Defendant-Appellee.

Second District   No. 2—88—0906

Opinion filed October 27, 1989.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Offices, of counsel), for the People.

James A. McCarron, of Law Office, of James A. McCarron, of Chicago, for appellee.

JUSTICE NASH delivered the opinion of the court:

The State appeals from an order of the circuit court which suppressed evidence seized from the person of defendant, Mozell Brown, in a search conducted after defendant was stopped for traffic offenses. The State contends that the arresting officer was justified in stopping defendant's vehicle for traffic violations and that the search was lawful as it was provoked by defendant's furtive movements. We affirm.

State Trooper Jeff Patterson testified at the hearing of defendant's motion to suppress evidence that on May 12, 1988, at 11 p.m., he observed defendant driving an automobile west on Interstate 290 in Du Page County and paced defendant's vehicle at 85 miles per hour in a 55-miles-per-hour speed zone. The vehicle began to exit the highway, without signaling, then suddenly returned to it, narrowly missing the officer's patrol car. Patterson activated his Mars light and siren, and defendant pulled over and stopped in an area along the highway

which had lights on each side. As the officer approached the vehicle, he saw defendant was behind the steering wheel and another person was in the front passenger seat. Defendant reached up toward the dashboard with his right hand and then down to the floor on the passenger's side. The officer did not see any object in defendant's hand.

Officer Patterson further testified that defendant remained seated in the car with the window rolled down. The officer advised defendant why he had stopped him, and defendant responded, "Yes, I was speeding." The officer requested identification, and defendant produced his driver's license, which the officer examined, then told defendant to step out of the car. The passenger remained in the front seat.

Outside of the car, the officer directed defendant to turn and face the vehicle and conducted a pat-down search of his body, outside of his clothes. He felt a hard object in the front pocket of defendant's jacket and, at that time, defendant turned and moved to put his hand in the pocket. The officer pushed defendant back against the car and directed him to place his hands upon it, but defendant again reached for his jacket pocket. The officer thereupon drew his revolver, pointed it at defendant and called on his hand radio for assistance. He then grabbed defendant by the shoulder and, at gun point, walked him back to the police car and put defendant over the hood. Defendant's hands were handcuffed behind his back, and the officer removed the contents of his pocket; he then put defendant down on the grass. In the pocket, the officer found a set of keys, pair of sunglasses, matches and two rolled cigarettes. Other officers arrived, and a search of the car revealed a radar detector on the floor by the passenger's seat.

When asked whether he had observed anything unusual about defendant prior to conducting the pat-down search, the officer referred only to the movement defendant made with his hand from the car dash to the floor when he was first stopped for the traffic offenses. The officer stated he saw nothing in defendant's hand at that time.

As relevant to our inquiry, defendant's testimony was essentially parallel to that of the officer except defendant stated that when the officer was searching him and felt a hard object, the officer asked what it was and defendant started to reach into the pocket to remove the sunglasses and wallet he carried there. At that point, the officer drew his weapon and defendant was handcuffed.

Defendant's passenger, Eworth Dickerson, testified that defendant cooperated with the officer and that at the time they were pulled over, defendant moved a radar detector from the dashboard to the

floor of the car.

Officer Patterson charged defendant with speeding, improper lane usage, unlawful possession of a controlled substance and possession of cannabis. The trial court found that the officer had no lawful basis to search defendant and suppressed the evidence seized from his person.

■ There is no question in this case that Officer Patterson had a basis for the initial stop of the vehicle for traffic offenses, as an officer may briefly detain an individual where there are articulable facts that there is a substantial possibility that an individual has committed, is committing, or is about to commit a criminal offense. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) At issue is whether defendant's movement within the vehicle as the officer approached provided a sufficient basis for a pat-down search of his person.

■ ■ The decision to suppress evidence will not be reversed unless the ruling is manifestly erroneous. (*People v. Rodriguez* (1987), 154 Ill. App. 3d 401, 402, 506 N.E.2d 1064, 1065.) The fact that an officer has reason to stop a citizen does not necessarily justify the further intrusion of a search, and the officer may conduct a pat-down search only if he has a reasonable belief that he is dealing with an armed and dangerous individual and that his safety, or the safety of others, is in danger. (*People v. Franklin* (1985), 131 Ill. App. 3d 479, 483, 475 N.E.2d 933, 936.) However, in determining the validity of the search, the courts should not set the test of sufficient suspicion that the defendant is armed and presently dangerous too high when the protection of the investigating officer is at stake. *People v. Kantowski* (1983), 98 Ill. 2d 75, 81, 455 N.E.2d 1379, 1382.

> "In the course of the investigatory stop, the officer may, in the interest of his own protection, conduct a reasonable search for weapons *where he has reason to believe* that he is dealing with a person who is armed and dangerous. The officer need not be certain that the person is armed. It is sufficient if a reasonably prudent man under the circumstances would be warranted in believing that his safety or the safety of others was in danger. Because the justification for the search is the protection of the officer, the scope of the search must be limited to an intrusion that is designed to discover instruments endangering the officer, such as guns, knives or clubs." (Emphasis added.) 98 Ill. 2d at 80, 455 N.E.2d at 1381.

The State cites *People v. Rodriguez* (1987), 154 Ill. App. 3d 401, 506 N.E.2d 1064, and *People v. Houldridge* (1983), 117 Ill. App. 3d 1059, 454 N.E.2d 769, for the proposition that defendant's move-

ments as the officer approached his vehicle would justify a reasonably prudent officer in believing his safety was in danger, and that the vehicle's passenger may have had access to a weapon, thereby justifying the pat-down search of defendant. However, in *Rodriguez* and *Houldridge*, while passengers made furtive movements in the car, this was coupled with other factors which justified the search of defendants. In *Rodriguez*, the defendant was loitering late at night in an area where several garage burglaries had recently occurred and was consuming alcohol in a public place. (*Rodriguez*, 154 Ill. App. 3d at 403, 506 N.E.2d at 1066.) In *Houldridge*, the police relied on information acquired over the police radio that the registration of the vehicle was expired or invalid, and the subsequent search was based in part on the officer smelling the odor of marijuana, and defendant dropping a marijuana cigarette as the officer approached. *Houldridge*, 117 Ill. App. 3d at 1063-64, 454 N.E.2d at 772.

In the present case the officer properly stopped defendant for traffic violations, but had no reasonable basis which he could articulate to conduct the search after ordering defendant out of the car. When requested, the defendant did produce his driver's license in a manner which caused no alarm to the officer, who examined it and then ordered defendant out of his car and searched him. There is no evidence that the license was improper in any way or alerted the officer to the possibility of personal risk. No authority has been offered by the State, or seen in our research, which would permit even a limited search of a defendant's person simply because he has been stopped for a traffic violation for which, ordinarily, a citation would be issued for a later court appearance.

The State here relies upon the "movement" made by defendant when stopping the vehicle on signal by the officer. The fact that the movement of defendant's hand from the dash to the floor of the car was later disclosed as a harmless effort to get his radar detector out of sight does not affect the issue we consider. The question remains whether a reasonably prudent man would, under the circumstances, be warranted in believing his safety was in danger solely because of the movement. We think not.

In our view it was not reasonable for the officer to place defendant against his car and search him under the facts then known to the officer. If vague movements within a traffic violator's vehicle are considered sufficient, without other facts suggesting possible danger to the officer, to conduct even a limited search of the violator's person, similar unwarranted police intrusions of this nature would surely be generated. (*People v. Collins* (1977), 53 Ill. App. 3d 253, 368

N.E.2d 1007; *People v. Myers* (1978), 66 Ill. App. 3d 934, 384 N.E.2d 516.) As, in the present case, the "hard" object in defendant's jacket pocket (sunglasses) was noted only by reason of the improper search, that fact cannot be considered as support for the reasonableness of the initial search.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

UNVERZAGT, P.J., and REINHARD, J., concur.