THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL D. KRAMER *et al.*, Defendants-Appellees.
Third District   No. 3—90—0343

Opinion filed January 2, 1991.—Modified opinion filed January 9, 1991.

Edward Burmila, State's Attorney, of Joliet (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Peter A. Carusona, of State Appellate Defender's Office, of Ottawa, for appellees.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The defendants, Michael D. Kramer and Adam E. Denny, were charged with unlawful possession of a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(b)). The defendants filed a motion to quash their arrest and suppress evidence seized by the police. Following a hearing, the trial court allowed their motion. The State appeals that decision.

Joliet police officer Gary Baggett testified that while on routine patrol at 4 a.m. on October 13, 1989, he saw a gray Camaro parked in a no-parking zone on Broadway Street. He had seen the car being driven in the same area about a half-hour earlier. Officer Baggett noted that it was a high-crime area. Upon passing the car, the police

officer started to turn around in order to go back and ask the car's occupants why they were in the no-parking zone. At that point, the Camaro pulled away. The officer then completed his turn and followed the vehicle, making a traffic stop three blocks away. After approaching the occupants of the vehicle, Officer Baggett asked them for some form of identification, which they both produced. The driver handed him an apparently valid driver's license. The officer then asked the defendants if they realized they had been parked in a no-parking zone. He also asked them what they had been doing on Broadway Street. They replied that they were lost and had been trying to find someone for directions. The officer noted, however, that he had not seen anyone near the defendants' car and that the defendants appeared nervous while answering his questions.

Officer Baggett further testified that he had radioed that he was making a traffic stop and knew from the response that an officer would soon be backing him up. About a minute after Baggett obtained the defendants' identifications, the back-up officer arrived. Baggett then asked the defendants to exit the car so he could conduct a patdown search for his own safety. He noted that he felt his safety was jeopardized because of the nervous, fidgety behavior of the defendants as he talked to them and their presence late at night in a high-crime area.

As Baggett was conducting the pat-down search of the defendants, the other officer informed him that he could see an open beer and bags containing white powder inside the defendants' car. As a result of that information, Baggett placed the defendants under arrest.

The trial court found that the items the officer saw in plain view would not have been found if Baggett had not asked the defendants to leave their vehicle. The court then granted the defendants' motion, ruling that Baggett did not have the right to ask them to exit the vehicle for a search.

On appeal, the State argues that the trial court erred in granting the defendants' motion to suppress. It contends that Officer Baggett legitimately ordered the defendants out of the car to perform a patdown search for weapons. The State also argues that even if the patdown search itself was not proper, the defendants were properly ordered out of their vehicle for valid safety reasons, as allowed by *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330.

In response, the defendants initially contend that the stop of their vehicle was invalid. We find, however, that the State's above-men-

tioned issues are dispositive of the outcome of the case. We therefore do not find it necessary to decide the question of whether the initial stop of the defendants' vehicle was valid.

■■ ■ One of the exceptions to the warrant requirement is the protective frisk for weapons exception recognized in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and codified by section 108—1.01 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 108—1.01). The right to frisk does not automatically follow the right to stop. The sole justification of such a search is the protection of the police officer and others nearby; it is not to gather evidence. (*People v. Galvin* (1989), 127 Ill. 2d 153, 535 N.E.2d 837.) An officer may conduct a pat-down search only if he has a reasonable belief that he is dealing with an armed and dangerous individual and that his safety or the safety of others is in danger. (*People v. Brown* (1989), 190 Ill. App. 3d 511, 546 N.E.2d 95.) The officer need not be absolutely certain that the individual is armed. The issue is whether a reasonably prudent man in the same circumstances would be warranted in the belief that his safety or that of others was in danger. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) The decision to suppress evidence will not be reversed on review unless it is manifestly erroneous. *People v. Brown* (1989), 190 Ill. App. 3d 511, 546 N.E.2d 95.

■■ Applying the above principles to the present case, we find that the trial court's decision was not manifestly erroneous. Officer Baggett stopped the defendants' ostensibly to inquire why they had been in a no-parking zone. The defendants explained to the officer that they were lost and had pulled over to ask for directions. Upon request, the defendants produced identifications. The officer specifically testified that the driver produced a driver's license. He also testified that he was satisfied with the identifications produced by both defendants. Shortly after Officer Baggett examined the defendants' identifications, but before the defendants were ordered out of their car, a back-up officer arrived at the scene. We find the trial court acted properly when it found that Officer Baggett was not acting under a belief that his safety or that of others was in danger.

Moreover, we note that the record does not reveal that the officer observed any suspicious behavior on the part of the defendants, other than their nervousness, that might indicate they were armed or dangerous. The State places much reliance on the officer's representation that the defendants were traveling in a high-crime area late at night. However, the trial court, in its role as the judge of the credibility of the testimony and the weigher of the evidence, specifically noted that

it was not particularly impressed with the officer's representation that the area was a high-crime area.

The State further argues that regardless of whether the pat-down search was justified, the defendants were properly ordered out of their vehicle for valid safety reasons pursuant to *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330.

The State's reliance on *Mimms* is misplaced. In *Mimms*, the officer stopped a vehicle to issue a traffic summons. Upon approaching the vehicle, the officer asked the defendant to step out of the car to produce his operator's license. As the defendant alighted, the officer noticed a large bulge under his jacket. Fearing that the bulge might be a weapon, the officer frisked the defendant and discovered a gun. The court focused its inquiry not on the validity of the frisk, but on the intrusion resulting from the request to get out of the car. It then held that the intrusion into the driver's liberty interest was *de minimis*.

In the present case, unlike *Mimms*, the defendants were not ordered to exit the car as part of the initial detention. Rather, the officer had already approached the car, questioned the defendants, and examined their licenses before they were ordered to leave the vehicle. Moreover, we note that the officer specifically testified that he ordered the defendants out of the car for the purpose of conducting a pat-down search. We think it plain that if the officer did not have grounds to conduct a frisk, then his ordering the defendants out of the car for that purpose was also groundless.

Under the circumstances, we find that the trial court's decision suppressing the evidence was not manifestly erroneous.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

BARRY and GORMAN, JJ., concur.