THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MAX PENCE, Defendant-Appellee.

Third District No. 3—91—0339

Opinion filed March 9, 1992.

William Herzog, State's Attorney, of Kankakee (Robert M. Hansen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE SLATER delivered the opinion of the court:

Defendant Max Pence was charged with unlawful possession of a weapon by a felon, unlawful use of weapons, theft and resisting a peace officer. The trial court granted defendant's motion to quash his arrest and suppress evidence. The State appeals. We affirm.

Patrolman Robin Passwater of the Kankakee police department testified at the suppression hearing that he and patrolman James Alrandi were on patrol at 2:45 a.m. on September 30, 1990, when they saw defendant's car go through a stop sign. After the car was stopped, Alrandi obtained defendant's driver's license and returned to the squad car to run a license check and write a warning ticket. Passwater conversed briefly with defendant, who was alone in the car, and asked defendant for permission to search the car. Defendant agreed. By that time, another police unit was at the scene and patrol-

man Patrick Kane was standing on the other side of defendant's car. Passwater had defendant step out of the car and then asked him to turn around and put his hands on the car. A pat-down search of defendant revealed a handgun in defendant's jacket pocket. When asked why he frisked the defendant, Passwater responded:

> "Just common procedure. It is for our own safety. Anybody steps out of a vehicle and is going to be standing next to you, we have to make sure they don't have anything on them."

Passwater noted that he would ask permission to search a vehicle if he was "suspicious at all." His suspicions were aroused in this case because of the time of night, the fact that the area was known for narcotics activity and because defendant's explanation that he was in the area to meet someone "just wasn't flowing right." Passwater agreed, however, that defendant was cooperative. When asked whether there were any other reasons that he was suspicious, Passwater answered:

> "I don't know. I can't remember the way [defendant] was acting or anything. I believe he was pretty clam [*sic*] about the whole situation other than that, no. It's just basically because it's done on every stop over there now."

Defendant testified that the police turned on their lights before he reached the stop sign and that he stopped and then turned at the corner and pulled over. After giving his license to Alrandi, Passwater asked the defendant if he had any marijuana or cocaine in the car. After defendant denied having any drugs, Passwater asked for permission to search the car and defendant agreed. Defendant was then asked to get out of the car and was searched.

In granting defendant's motion, the trial court found that defendant was properly stopped for a traffic violation. The court also found, however, that the search was unlawful, noting that "[t]here seems to have been an amendment to the Constitution [which] says the Constitution shall not apply at night in high crime areas."

■■ The fact that a police officer has reason to stop an individual does not necessarily justify the intrusion of a search for weapons. (*People v. Brown* (1989), 190 Ill. App. 3d 511, 546 N.E.2d 95.) A police officer is permitted to search for weapons when he has reason to believe that he is dealing with an armed and dangerous individual. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.)

> "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations.] And in determining

whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicions or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883.

■ At a hearing on a motion to suppress, it is the trial court's function to determine the credibility of the witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. (*People v. Galvin* (1989), 127 Ill. 2d 153, 535 N.E.2d 837.) A trial court's decision on a motion to suppress evidence will not be reversed unless it is manifestly erroneous. *Galvin*, 127 Ill. 2d 153, 535 N.E.2d 837; *Brown*, 190 Ill. App. 3d 511, 546 N.E.2d 95.

■ Under the facts of this case, we are unable to find that the trial court's decision to grant the motion to suppress was manifestly erroneous. Officer Passwater admitted that the defendant was calm and cooperative. There is nothing in the record to indicate that defendant acted in a manner which would lead a reasonably prudent person to suspect that he was armed. Indeed, Passwater did not testify that he felt the defendant was dangerous. Instead, Passwater searched the defendant because it was "[j]ust common procedure" and "basically because it's done on every stop over there now." While a police officer's subjective feelings do not determine whether a frisk is valid, "the testimony of an officer as to his subjective feelings is one of the factors which may be considered in the totality of the circumstances known to the officer at the time of the frisk." (*Galvin*, 127 Ill. 2d at 168, 535 N.E.2d at 843.) While Passwater testified that he was suspicious because the hour was late, there was a high level of narcotics activity in the area, and defendant's explanation that he was in the area to meet someone "wasn't flowing right," those circumstances do not rise to the level of specific and articulable facts necessary to justify a search for weapons. (See *People v. Kramer* (1991), 208 Ill. App. 3d 818, 566 N.E.2d 756.) While we are cognizant of the dangers faced by police officers and the difficulties they encounter in attempting to balance their risk of harm against a citizen's constitutional rights, we are nevertheless duty bound to uphold those rights. The judgment of the circuit court is affirmed.

Affirmed.

BARRY, P.J., and GORMAN, J., concur.