THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. SAMUEL L. ANDERSON, Defendant-Appellee.

Second District    No. 2—98—0266

Opinion filed May 3, 1999.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE RAPP delivered the opinion of the court:

Defendant, Samuel L. Anderson, was charged with three counts of violating section 407(b)(1) of the Illinois Controlled Substances Act (the Act) (720 ILCS 570/407(b)(1) (West 1996)). The State appeals from the trial court's granting of defendant's motion to suppress physical evidence, alleging that the decision was manifestly erroneous. We affirm.

On November 26, 1997, defendant was charged by indictment with three counts of violating section 407(b)(1) of the Act. On December 18, 1997, defendant filed a motion to suppress physical evidence.

On January 20, 1998, a hearing on defendant's motion to suppress physical evidence was conducted. Officer Randy Berke testified that he was a Rockford police officer on November 7, 1997. He was on patrol with Officer Michael Clark in the 600 block of North Rockton Avenue

at approximately 5 p.m. on that date. While on patrol, Officer Berke recognized defendant standing in front of 607 North Rockton Avenue. At that time, Officer Berke believed that defendant was wanted on a warrant. Officer Berke had observed defendant's warrant on the daily "squeal sheet" he received a few days prior to the arrest. Officer Berke acknowledged that defendant's name was not on the "squeal sheet" the morning of November 7. He did not recall having seen defendant's name on the November 5 or November 6 "squeal sheets."

Officer Berke and Officer Clark pulled up in their squadrol van and approached defendant. As they approached, Officer Berke observed defendant place an object into the upper left pocket of his jacket. Officer Berke stated that he could not ascertain if defendant had a weapon or contraband. The officers told defendant to place his hands on top of the vehicle. Defendant complied with the officers' request. The officers each held one of defendant's arms.

Defendant asked the officers why he was being stopped. Officer Berke responded that he believed defendant was wanted on a warrant. Defendant responded that he was no longer wanted for the warrant. Officer Berke attempted to verify whether there was an outstanding warrant for defendant and was informed that the computer system was down. Officer Berke said that due to a gesture defendant made he asked defendant if there was anything he should know about, such as weapons or sharp objects. Defendant responded negatively. Officer Berke asked defendant if he would mind if the officer checked, and defendant responded, "go ahead." At that point, Officer Berke searched the pocket that he observed defendant make the motion of putting an object into. Officer Berke located a prescription bottle in defendant's pocket. Officer Berke did not recall if there was a name label on the bottle. The bottle was brown in color but transparent. Officer Berke could see inside the bottle, and he then opened it. The bottle contained five pieces of an off-white, rock-like substance. In Officer Berke's experience, the items resembled drugs. Officer Berke confiscated these items, including a piece of tinfoil, commonly used for containing narcotics. No weapons were found on defendant. The entire incident lasted a couple of minutes. Officer Berke stated that he was concerned for his safety but that he did not know why he did not pat down defendant.

Officer Berke testified that it is common for defendants to say that warrants have been taken care of. Officer Berke stated that if there is a new warrant for an individual, it will be shown on the "squeal" sheet. If the warrant is not served within three weeks, the name will not appear every day. As the officers were pulling into the Public Safety Building, it was determined that there was no warrant for defendant.

Officer Clark testified that he was a Rockford police officer on duty November 7, 1997, at approximately 5 p.m., with his partner, Officer Berke. The officers observed and approached defendant in front of 607 North Rockton Avenue. As they approached, the officers observed defendant put something into his pocket. The officers believed that defendant was wanted on a warrant. The officers asked defendant to put his hands on the vehicle and asked defendant if he had anything on him, such as narcotics or needles, and defendant responded that he did not. Officer Berke asked defendant if they could pat him down and defendant responded, "go ahead."

Officer Clark testified that both he and Officer Berke believed there was a warrant for defendant, based upon seeing defendant's name on the "squeal sheet." Defendant's name was on the "squeal sheet" the last couple of days prior to the arrest. Defendant told the officers that there was no warrant. The officers were unable to ascertain if there was an active warrant because the computer was down.

Defendant put his hands on the vehicle pursuant to the officers' request. The officers held defendant's arms and handcuffed defendant after Officer Berke found the prescription bottle. Officer Clark did not recall if the bottle had defendant's name on it. Officer Clark stated that he was concerned for his safety because they had observed defendant put something into his pocket.

Defendant's mother, Mary Anderson, testified that on November 7, 1997, she lived at 607 North Rockton. Defendant came by her house that day, as she had custody of two of his children. She was sitting on her porch when defendant and his wife came by. She observed the policemen make a U-turn, and she heard defendant tell the officers that he had "got it vacated yesterday" and that the officers were "just picking on" him. She left the porch to see what was happening. At that time, defendant was handcuffed and the two officers were going through his pockets. She did not hear any of the prior conversation.

Defendant testified that on November 7, 1997, he was in front of 607 North Rockton at about 5 p.m. The officers pulled up, got out of the van, and handcuffed him, telling him that they had a warrant for his arrest. Defendant told the officers that the warrant had been vacated the day before. The officers each had him by an arm and were searching him. The officers did not ask defendant if they could search him.

Following arguments by counsel, the trial court denied defendant's motion to suppress physical evidence but noted that it would be willing to revisit the issue and commented:

"I don't think it's probable cause when you see somebody walk-

ing the street and you see an individual put something in his pocket that you can't identify. If the officer had said maybe that I can't be sure about that, it looked like a gun to me or something like that, but my recollection of the officer's [sic] testimony was that they couldn't tell what it was, and any of us can be walking down the street and say put keys in our pocket or people that still smoke could put a pack of cigarettes in their shirt pocket or book of matches, sunglasses, who knows, I don't think that creates probable cause standing by itself."

At defendant's request, the court allowed both sides to research authority and on February 5, 1998, the matter was again heard by the court on defendant's motion to reconsider the prior ruling. Both parties presented argument. On February 10, 1998, the trial court reversed its prior decision and granted defendant's motion to suppress the physical evidence. The trial court explained its ruling as follows:

"This is a very interesting issue here. I don't think that the search was good, and there was a seizure. In a legal sense I don't think it's good in the absence of a valid warrant, and the only way I think I could justify it would be to adopt that language found in one or two of the cases.

The phrase is [']justifiable administrative delay,['] but in this case, I believe I understood the testimony as I heard it.

Mr. Anderson's name was on what they call the squeal sheet indicating there was an outstanding warrant several days prior to the arrest, then it wasn't on the squeal sheet for a couple of days immediately preceding the date of the arrest so that the last available information is that there's no warrant, and so that leaves us only with the words we all addressed here, 'the computer is down.'

Based on the language I found in the cases [sic] law, the computer is under the exclusive control of the law enforcement agency and not obviously under the control in any sense of the defendant.

So in this case for those reasons, which I have not been very particular in trying to expresses [sic], but I read the cases, but you know what I'm talking about. The motion is granted."

We have considered the trial judge's statements made on both occasions of his rulings, and we conclude that the findings of fact required under section 114—12(e) of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/114—12(e) (West 1996)) have been adequately addressed.

The State timely appealed, pursuant to Supreme Court Rule 604(a)(1) (145 Ill. 2d. R. 604(a)(1)). The State argues that the trial court's granting of defendant's motion to suppress was manifestly erroneous for three reasons: (1) at the time of the stop, the officers believed in good faith that defendant was wanted on a warrant; (2) the

search was justified because the officers observed defendant putting something into his pocket; and (3) the search was consensual. A trial court's ruling with respect to a motion to suppress evidence is subject to reversal if manifestly erroneous. *People v. James*, 163 Ill. 2d 302, 310 (1994).

■ The State first argues that at the time of the stop the officers believed in good faith that defendant was wanted on a warrant. However, an arrest based on an invalid warrant is not legitimized by the officer's ignorance of the warrant's invalidity. *People v. Turnage*, 162 Ill. 2d 299, 310 (1994). When a warrant has been vacated but the police fail to remove it from their active warrant list, any evidence obtained during the execution of that warrant must be suppressed. *People v. Sullivan*, 243 Ill. App. 3d 830, 833 (1993); *People v. Joseph*, 128 Ill. App. 3d 668, 672-73 (1984).

In *Sullivan*, police officers encountered the defendant in a van that was parked illegally. The officers radioed to see whether the defendant was wanted on any warrants. They were informed that the defendant was wanted for contempt of court. The officers informed the defendant of the warrant, and the defendant told the officers that the warrant had been dismissed. The officers then arrested the defendant, searched his van, and found controlled substances. It was later discovered that the warrant had indeed been dismissed. On appeal, this court held that, because the arrest was not based on a valid warrant or probable cause, the arrest was illegal, and the evidence was properly suppressed. *Sullivan*, 243 Ill. App. 3d at 834.

■ In the instant case, defendant was simply standing, lawfully, in front of his mother's house. The encounter was occasioned entirely by the officers' mistaken belief that there was a warrant for defendant's arrest. As in *Sullivan*, the warrant had been vacated prior to defendant's encounter with the police, and this information was not made available to the arresting officers. As we held in *Sullivan*, when a defendant is detained and searched pursuant to an invalid warrant, any evidence obtained during that search must be suppressed. *Sullivan*, 243 Ill. App. 3d at 833-34.

The State attempts to distinguish *Sullivan* on the ground that, in the instant case, the last information received by the officers was that the police department's computers were down. The State argues that this forced the officers to rely on their previous knowledge that an active warrant existed for defendant's arrest. The State also asserts that the officers acted in good faith because there was no showing that the last information the officers received was wrong. We reject the State's argument because it was clear that the officers knew only that defendant's name had appeared on the "squeal sheet" two or three

days prior to the arrest and that defendant's name did not appear on the "squeal sheet" the day of the arrest or on the day prior to the arrest. Even if we accept the State's argument that the last information the officers received was that a warrant existed for defendant's arrest, the fact remains that a valid warrant did not exist. Thus, as in *Sullivan*, the fruits of the instant stop, which was based on the officers' mistaken belief that there existed a valid warrant for defendant's arrest, were properly suppressed.

The State suggests that this case is factually similar to *People v. White*, 51 Ill. App. 3d 155 (1977). *White* involved a petition to revoke the defendant's probation on the basis of an allegation that he possessed heroin. Before the arrest, the arresting officer was in court, where he heard a judge issue a bond forfeiture warrant for the defendant. Two days later, the same officer observed a group of men, including the defendant, who appeared to be engaged in a drug transaction. When the officer approached, he saw the defendant swallow a tinfoil packet. The officer inquired about the bond forfeiture warrant, and defendant responded that the warrant had been vacated; however, because the defendant could not produce any documented proof, the officer arrested him. Subsequent to the arrest, the defendant was put in the backseat of the officer's squad car. The officer leaned into the car and noticed a bulge in the defendant's sock. The officer searched the bulge and discovered packets of heroin.

The *White* court concluded that the arrest was valid because the officer had firsthand knowledge of the issuance of the warrant; consequently, the fact that the officer had no personal contact with the warrant itself was of no import. *White*, 51 Ill. App. 3d at 160. The *White* court also noted that the defendant had failed to provide the officer with any documentation of the warrant's vacation. *White*, 51 Ill. App. 3d at 160.

We find *White* distinguishable. In *White*, there was no indication whether the warrant had been vacated; the last information known to the officer was that the warrant had, in fact, issued. In the present case, the officers knew that defendant's name had disappeared from the "squeal sheet." Moreover, because *White* involved probation revocation proceedings, rather than a trial, evidence obtained in violation of the fourth amendment was not *per se* subject to exclusion; thus, the standards and legal considerations that applied were different. See *People v. Dowery*, 62 Ill. 2d 200, 204-08 (1975).

*White* was distinguished on similar grounds in *Joseph*, 128 Ill. App. 3d 668, a case closely resembling the case at bar. In *Joseph*, the officers were familiar with the defendant. When they saw him during a routine patrol, they checked their mobile computer and were

informed that the defendant was wanted on a bond forfeiture warrant. In fact, the warrant had been vacated. The officers arrested the defendant on the invalid warrant. While leading the defendant to the squad car, the officers saw the defendant drop four pills to the ground, occasioning a charge of unlawful possession of a controlled substance.

The court in *Joseph* reversed the trial court's denial of the defendant's motion to suppress on grounds that the arrest was invalid. *Joseph*, 128 Ill. App. 3d at 673. The court held that *White* was distinguishable because the officers in *Joseph* had not relied on their own personal knowledge that a warrant had issued. *Joseph*, 128 Ill. App. 3d at 673. Rather, the court observed that the facts before it demonstrated the injustice that can result when the police fail to update their records; that the defendant was arrested through no fault of his own; and the fact that the arresting officer relied in good faith on information garnered from flawed official police channels did not render this intrusion constitutional. *Joseph*, 128 Ill. App. 3d at 672.

The instant case is closely analogous to *Joseph*. As in *Joseph*, the warrant in this case had been vacated. In *Joseph*, the police department's computers did not reflect that the warrant had been vacated. In this case, the computers were down. The defendant in each case was subject to arrest through no fault of his own. Just as the court in *Joseph* held that it is unjust to suspend a citizen's fourth amendment rights when police department computers contain inaccurate information, we believe it is equally unjust to suspend those rights when the police department computers provide no information. See *Joseph*, 128 Ill. App. 3d at 672.

We also find the State's reliance on *People v. Rayford*, 281 Ill. App. 3d 596 (1996), misplaced. In *Rayford*, the officer noticed the defendant, who was sitting in a car with the engine running. The officer ran a computer check on the license plates and discovered that the car had been reported stolen 16 days previously. The officer confronted the defendant, who told the officer that he had borrowed the car from his uncle. Still thinking the car was stolen, the officer arrested the defendant and searched the car. The search revealed two semiautomatic weapons. Subsequently, the officer contacted the defendant's uncle and ascertained that the uncle did lend his car to the defendant. At some point, the officer also learned that the stolen car had been recovered the day after it was reported stolen; however, the record did not disclose how the officer ascertained this.

In affirming the trial court's denial of the defendant's motion to suppress, the *Rayford* court acknowledged that "the State may not rely on an inactive warrant to demonstrate probable cause to arrest a defendant and search his vehicle." *Rayford*, 281 Ill. App. 3d at 598. The court in *Rayford* specifically stated:

"The issue in [Rayford's] case did not involve a deficiency in the warrant which ultimately led to the exclusion of evidence confiscated pursuant thereto. The pivotal determination in defendant's case is whether the computer data accurately reflected all of the information about the stolen car known to the police at the time of defendant's arrest." *Rayford*, 281 Ill. App. 3d at 600.

The *Rayford* court found that there was no evidence that the defendant's arrest was predicated on erroneous information negligently retained in the police computer. *Rayford*, 281 Ill. App. 3d at 600. Specifically, there was no evidence that the police had themselves recovered the stolen car or that they had been informed of the car's recovery. *Rayford*, 281 Ill. App. 3d at 600-01. The court noted that the police cannot be expected to know that stolen property has been recovered unless that fact is reported to them. *Rayford*, 281 Ill. App. 3d at 601. Because the defendant had failed to establish that his arrest was a result of police negligence in failing to update their records, the arresting officer's conduct did not violate the fourth amendment. *Rayford*, 281 Ill. App. 3d at 601.

The present case is distinguishable from *Rayford*. Here, the arresting officers were ignorant of a fact known to the police department—that the warrant for defendant had been vacated. That information was under the control of the law enforcement agency.

■ The State next argues that, since the officers observed defendant put something into his pocket, the search was justified under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). For a stop to be justifiable under *Terry*, the officer must present specific, articulable facts which would cause a reasonable person to fear for his safety or the safety of others. See *People v. Galvin*, 127 Ill. 2d 153, 174 (1989). Absent such circumstances, a warrantless search is unreasonable and the testimony by an officer that he subjectively feared for his safety, standing alone, does not satisfy this requirement. See *Galvin*, 127 Ill. 2d at 167.

In *Galvin*, the officers stopped the defendant because his license plates matched those of a car suspected to be involved in a series of recent burglaries and because the officers had observed the defendant engage in a number of suspicious activities throughout that evening. The officers searched the defendant and his car, finding live ammunition in the defendant's pocket and a screwdriver, which the officers concluded was a burglary tool, in the car. At the hearing on the defendant's motion to suppress the fruits of the search, the testifying officer stated that he was concerned for his safety but did not specify reasons that would have led a prudent person to reasonably believe that the officer or anyone else was in danger. *Galvin*, 127 Ill. 2d at 158-62.

The court held in *Galvin* that, in determining whether a search is justifiable under *Terry*, an objective standard must be used. *Galvin*, 127 Ill. 2d at 167. The officer must be able to point to specific facts that would cause a reasonable person to fear for his safety. *Galvin*, 127 Ill. 2d at 174. The court stated that the officer's subjective feeling cannot control the outcome of the validity of a search. *Galvin*, 127 Ill. 2d at 167.

In the case at bar, the only fact the officers gave as a basis for their alleged fear for their safety was that, as they were walking toward defendant, they saw defendant put something in his upper left jacket pocket. We do not believe that the mere fact that a person put something into his pocket would cause a reasonable person to fear for his safety. As the trial court observed, a person standing on the street may reach into his pocket to put away keys, cigarettes, sunglasses, or any number of innocuous objects.

Similar movements have been rejected as justification for a search under *Terry*. In *People v. Dotson*, 37 Ill. App. 3d 176 (1976), while being examined by a police officer, the defendant stepped back a few steps, shifting his weight on his feet, and kept sticking his hand into his pocket. Those movements were found not to justify a patdown search. *Dotson*, 37 Ill. App. 3d at 177. In *People v. Creagh*, 214 Ill. App. 3d 744 (1991), an officer who had pulled a car over for traffic violations noticed the defendant moving in his seat, as though he was sticking something into his pants. In rejecting the argument that the movement justified a patdown, the court noted that "looks, gestures, and movements taken alone are insufficient to constitute probable cause to search since they may be innocent." *Creagh*, 214 Ill. App. 3d at 747-48. In *People v. Brown*, 190 Ill. App. 3d 511 (1989), a defendant who was stopped for traffic violations was searched after the officer saw him reach for his jacket pocket a few times. This circumstance was found not to justify a *Terry* search. *Brown*, 190 Ill. App. 3d at 515. In *People v. Kramer*, 208 Ill. App. 3d 818, 821 (1991), the court noted that a display of nervousness alone does not warrant a patdown search under *Terry*.

The gesture observed by the officers in this case does not come close to those circumstances that have been found to justify patdown searches under *Terry*. Additionally, we note that even if the officers observing defendant put something into his pocket was sufficient to justify a *Terry* search, the search that produced the prescription bottle was beyond the scope of the limited patdown for weapons allowed under *Terry*. In Illinois, the rule in *Terry* has been codified as follows:

"§ 108—1.01. Search During Temporary Questioning. When a peace officer has stopped a person for temporary questioning pur-

suant to Section 107—14 [(725 ILCS 5/107—14 (West 1996))] of this Code and reasonably suspects that he or another is in danger of attack, *he may search the person for weapons*. If the officer discovers a weapon, he may take it until the completion of the questioning, at which time he shall either return the weapon, if lawfully possessed, or arrest the person so questioned." (Emphasis added.) 725 ILCS 5/108—1.01 (West 1996).

According to Officer Berke and Officer Clark, the instant search was not a patdown for weapons. Officer Berke testified that he "went for the pocket that I saw him make that motion placing this object in." When defense counsel asked, "What—were you going to search him, pat him down for weapons?" Berke responded, "I probably would have given him a pat down for weapons, that's correct. Would I have gone in his pockets, probably not." Accordingly, we find that the search was beyond the scope of a limited patdown for weapons allowed under *Terry*.

■ Finally, the State argues that the search was consensual. The State must prove by a preponderance of the evidence that such consent to be searched was given voluntarily. *People v. Casazza*, 144 Ill. 2d 414, 417 (1991). The trial court did not rule on whether the search was consensual. However, because defendant was detained in an illegal stop, his alleged subsequent consent to be searched was tainted and had no legal effect. See *Florida v. Royer*, 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983) (held that consent to search luggage was tainted by illegal detention at airport so as to be ineffective to justify search).

The State alternatively asks this court to consider creating a "good faith" exception to the exclusionary rule to cover the circumstances in this case. See *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984). In *People v. Aaron*, 296 Ill. App. 3d 317, 328-29 (1998), this court characterized *Leon* as holding that the fourth amendment does not bar the use of evidence obtained by an officer who reasonably relied in good faith on a search warrant issued by a neutral and detached magistrate but ultimately found to be unsupported by probable cause. Moreover, our legislature has codified the "good faith" exception in sections 114—12(b)(1) and 114—12(b)(2) of the Code so as to mirror the rule in *Leon*. In *Turnage*, 162 Ill. 2d at 312, our supreme court specifically held that under *Leon* the appropriate focus is not on the conduct of the arresting officer but on the conduct of those who procured the warrant and informed the arresting officer of the warrant's continued vitality.

■ We find that the "good faith" exception to the exclusionary rule does not apply to a police encounter that is occasioned entirely by

the officers' mistaken belief that there was a warrant for defendant's arrest. Thus, when a defendant is detained and searched pursuant to an invalid warrant, any evidence obtained during that search must be suppressed. *Sullivan*, 243 Ill. App. 3d at 833-34.

In conclusion, defendant was unlawfully searched after being stopped by police officers absent a warrant for his arrest, probable cause, or the existence of circumstances that would lead someone to reasonably conclude that a crime was afoot. Defendant's alleged consent, given after having been told that the officers were serving an arrest warrant, was fatally tainted by the illegal arrest. Consequently, we find that the trial court's order granting defendant's motion to suppress was not contrary to the manifest weight of the evidence.

Therefore, the order of the circuit court of Winnebago County granting defendant's motion to suppress physical evidence is affirmed.

Affirmed.

McLAREN and GALASSO, JJ., concur.