# Illinois Official Reports

## Appellate Court

*People v. Smith*, 2015 IL App (1st) 131307

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VERNON SMITH, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-1307 |
| Filed | May 29, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-2825; the Hon. Evelyn B. Clay and the Hon. James B. Linn, Judges, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Joshua M. Bernstein, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Carol L. Gaines, and Leslie Billings, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Presiding Justice Palmer and Justice Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1        Following a jury trial, defendant was convicted of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6 (West 2010)) and unlawful use of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1 (West 2010)). The trial court subsequently sentenced defendant to concurrent terms of nine years in the Illinois Department of Corrections.

¶ 2        Defendant appeals, arguing that: (1) the trial court erred in denying his motion to quash his arrest and suppress evidence because defendant's "furtive movements" did not support a reasonable inference that he was armed and dangerous; (2) defendant's convictions for AUUW and UUWF violate the one-act, one-crime rule; (3) defendant's conviction for UUWF violates the second amendment (U.S. Const., amend. II); (4) defendant's sentence for AUUW violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11); and (5) the mittimus should be corrected to reflect 450 days of presentence credit and that defendant was found guilty of counts I and V.

¶ 3        Following a traffic stop in February 2011, a firearm and ammunition were found in defendant's vehicle. Defendant was arrested and subsequently indicted on multiple counts of AUUW and UUWF. Prior to trial, defendant filed a motion to quash his arrest and suppress evidence. In his motion, defendant argued that his conduct prior to his arrest "would not reasonably be interpreted by the arresting officers as constituting probable cause that [defendant] had committed or was about to commit a crime."

¶ 4        The trial court conducted a hearing on defendant's motion in July 2011. At the hearing, Baretta Thomas testified that he was in the passenger seat of defendant's car at approximately 1:30 a.m. on February 5, 2011. Defendant was driving Thomas home. Thomas stated that the roads were slippery due to recent snowfall and defendant "slid" through the stop sign at 73rd Street and University Avenue. Thomas said that defendant pulled over immediately after the police activated their lights. Two officers approached the vehicle and one asked defendant for his driver's license and insurance. Thomas testified that the officers then removed Thomas and defendant from the car. The men were handcuffed together. The officers then searched the car. Thomas stated that defendant was calm and cooperative with the police officers. On cross-examination, Thomas admitted he was asleep during the incident and did not know if defendant stopped at the stop sign. Thomas stated on redirect that he was awake when the police turned on their lights.

¶ 5        Officer Perez testified for the State. He stated that on February 5, 2011, he was on routine patrol with a partner in uniform in a marked squad car. He was the driver and Officer Hagen was in the passenger seat. Officer Perez was driving westbound on 73rd when he approached a four-way stop with University. He observed a Buick LeSabre make a left turn from University onto 73rd without stopping at the posted stop sign. Officer Perez stated that he could see the rear brake lights on the car but did not see the lights on. He did not see "any pause at that intersection." At that point, Officer Perez "followed the vehicle for a couple of blocks and curbed it."

¶ 6        After the vehicle stopped, Officer Perez approached on the driver's side. He identified defendant as the driver. As he approached, he "observed [defendant] making a furtive movement towards the rear of the passenger seat." He stated that he saw defendant "reach with his right hand towards the rear of the front passenger seat." Officer Perez stated there

were streetlights in the area and the headlights of his vehicle and a spotlight were directed at the stopped vehicle.

¶ 7 Officer Perez asked defendant to step out of the vehicle and he detained him. Officer Perez testified that there was also a person in the front passenger seat. He stated that the passenger was asleep and his partner woke the passenger by banging on the door. Both men were asked to step behind the car and Officer Perez called for additional squad car assistance. He then returned to the vehicle and searched in the area where he observed defendant reach and he discovered a .25-caliber handgun with a purple Crown Royal bag containing live ammunition.

¶ 8 On cross-examination, defense counsel asked Officer Perez when he "put [his] lights on after the stop sign," and Officer Perez answered, "It wasn't until I–a couple of blocks before I curbed the vehicle." Defense counsel also asked, "When you curbed the vehicle, [defendant] pulled over immediately, is that fair to say?" Officer Perez responded, "Yeah." Officer Perez stated that when he approached the vehicle, he did not see a firearm in defendant's hand and that he never saw a firearm in defendant's hand. He said he was approximately three feet away when he observed defendant reaching for the back of the front passenger seat, but he had a clear view through the window. He estimated that defendant's movements lasted three to four seconds.

¶ 9 Officer Perez described defendant as quiet and he followed the officers' direction and was not argumentative. When asked why he asked defendant to step out of the car, Officer Perez answered, "for officer safety."

¶ 10 After hearing evidence and arguments, the trial court requested the parties submit additional briefing on the motion. In August 2011, the trial court denied defendant's motion to quash his arrest and suppress evidence. The court made the following findings on the record.

> "[I]t was a police car chasing a person. And the circumstances of that is [*sic*] as they are approaching this car, there is this furtive movement. The person is aware of an officer approaching ***. And the officers are aware that they had to trail someone for something–the stop wasn't right away. And I think that's part of the situation is the circumstances of the stop. And these types of cases are analyzed and determined whether or not–what the actions whether or not the officers took was appropriate under the law. And the court *** finds that it was. That being seeing that movement after giving chase, in uniform, but clearly a police car, movement toward the rear of the car there. And that they did a search and that weapon was recovered in the back area there towards where he made the furtive movement.
>
> The court finds, of course, the stop was valid because of the traffic incident. But the stop was valid. And then they were approaching to do this interview pursuant to the stop rather and the evidence that defendant seeks to suppress is–was recovered."

¶ 11 Defense counsel tried to clarify to the trial court that no chase occurred when defendant was pulled over, but the State disagreed. The court found that "[t]here was a chase however short. Under those circumstances, they come to this car. And the driver is gesturing, making a furtive movement toward the rear of the car as the officers are approaching from the rear." The court held that the officers' actions were constitutional.

¶ 12     A jury trial was conducted before a different trial judge in March 2013. Officer Perez's testimony was substantially similar to his testimony at the suppression hearing. Officer Perez stated that after he observed defendant disregard the stop sign, he "proceeded to get behind the vehicle and eventually we curbed him." The prosecutor asked Officer Perez, "By 'curbed,' do you mean you activated the lights and sirens?" Officer Perez responded, "Yes. We activated the lights and then he pulled to the side, pretty much curbed." On cross-examination, Officer Perez stated when he turned on his lights, the vehicle "curbed right away."

¶ 13     Officer Perez again testified that as he approached defendant's vehicle, he observed defendant "with his right hand with a shoving motion to the front passenger rear pouch *** of the seat." Officer Perez stated that he called for assistance and one unit arrived at the scene as he and his partner were moving defendant and Thomas to the rear of the car. Officer Perez then returned to defendant's vehicle and searched the pouch of the passenger seat. He recovered a loaded firearm and 16 rounds of live ammunition in a Crown Royal bag.

¶ 14     Officer Hagen testified that on February 5, 2011, he was on routine patrol and assigned with Officer Perez. Officer Hagen was the passenger in the marked squad car. He testified consistent with Officer Perez's description of the traffic violation. He stated that after they observed the vehicle disregard the stop sign, Officer Perez drove behind the vehicle and they ran the vehicle's license plate and then they curbed the vehicle.

¶ 15     As he approached the vehicle from the passenger side, Officer Hagen observed defendant "trying to hide something" with his right hand in the rear pouch of the front passenger seat. When Officer Hagen approached the passenger side, he saw an individual who appeared to be sleeping in the passenger seat. Officer Hagen knocked on the window to wake the passenger. He escorted the passenger out of the vehicle and brought him to the rear of the vehicle. He observed Officer Perez search where it appeared defendant may have hidden something. Officer Perez recovered a firearm and ammunition, which he showed to Officer Hagen.

¶ 16     The State also presented documents indicating: (1) defendant has never been issued a firearm owner's identification card, (2) a 1998 Buick LeSabre was registered to defendant, and (3) defendant's prior felony conviction for AUUW. The State then rested. Defendant moved for a directed finding, which the trial court denied. Defendant rested without presenting any additional evidence.

¶ 17     Following deliberations, the jury found defendant guilty of one count of AUUW and one count of UUWF. At the subsequent sentencing hearing, the trial court imposed concurrent terms of nine years' imprisonment for each count.

¶ 18     This appeal followed.

¶ 19     Defendant first argues that the trial court erred in denying his motion to quash his arrest and suppress evidence. Specifically, defendant contends that the trial court's conclusion that a chase occurred was erroneous and that a furtive movement alone was not sufficient to support a reasonable inference that defendant was armed and dangerous. The State maintains that it was reasonable for Officer Perez to believe that defendant was dangerous and may be able to gain immediate control of a weapon.

¶ 20     In reviewing a trial court's ruling on a motion to suppress, this court applies a *de novo* standard of review. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001); see also *Ornelas v.*

*United States*, 517 U.S. 690, 699 (1996). However, findings of historical fact will be reviewed only for clear error and the reviewing court must give due weight to inferences drawn from those facts by the fact finder. *Ornelas*, 517 U.S. at 699. Accordingly, we will accord great deference to the trial court's factual findings, and we will reverse those findings only if they are against the manifest weight of the evidence; however, we will review *de novo* the ultimate question of the defendant's legal challenge to the denial of his motion to suppress. *Sorenson*, 196 Ill. 2d at 431. "Further, the reviewing court may consider evidence adduced at trial as well as at the suppression hearing." *People v. Richardson*, 234 Ill. 2d 233, 252 (2009).

¶ 21     "Both the fourth amendment and the Illinois Constitution of 1970 guarantee the right of individuals to be free from unreasonable searches and seizures." *People v. Colyar*, 2013 IL 111835, ¶ 31 (citing U.S. Const., amend. IV, and Ill. Const. 1970, art. I, § 6). "This court has explained that '[t]he "essential purpose" of the fourth amendment is to impose a standard of reasonableness upon the exercise of discretion by law enforcement officers to safeguard the privacy and security of individuals against arbitrary invasions.' " *Id.* (quoting *People v. McDonough*, 239 Ill. 2d 260, 266 (2010), quoting *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979)).

¶ 22     "It is well settled that not every encounter between the police and a private citizen results in a seizure." *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006) (citing *Immigration & Naturalization Service v. Delgado*, 466 U.S. 210, 215 (1984)). "Courts have divided police-citizen encounters into three tiers: (1) arrests, which must be supported by probable cause; (2) brief investigative detentions, or '*Terry* stops,' which must be supported by a reasonable, articulable suspicion of criminal activity; and (3) encounters that involve no coercion or detention and thus do not implicate fourth amendment interests." *Luedemann*, 222 Ill. 2d at 544 (citing *United States v. Black*, 675 F.2d 129, 133 (7th Cir. 1982), and *United States v. Berry*, 670 F.2d 583, 591 (5th Cir. 1982)). "In *Terry*, the Court held that a brief investigatory stop, even in the absence of probable cause, is reasonable and lawful under the fourth amendment when a totality of the circumstances reasonably lead the officer to conclude that criminal activity may be afoot and the subject is armed and dangerous." *Colyar*, 2013 IL 111835, ¶ 32 (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "For a stop to be justifiable under *Terry*, the officer must present specific, articulable facts which would cause a reasonable person to fear for his safety or the safety of others." *People v. Anderson*, 304 Ill. App. 3d 454, 462 (1999). "Absent such circumstances, a warrantless search is unreasonable and the testimony by an officer that he subjectively feared for his safety, standing alone, does not satisfy this requirement." *Id.* "When reviewing the officer's action, we apply an objective standard to decide whether the facts available to the officer at the time of the incident would lead an individual of reasonable caution to believe that the action was appropriate." *Colyar*, 2013 IL 111835, ¶ 40.

¶ 23     The Supreme Court in *Michigan v. Long*, 463 U.S. 1032, 1049 (1983), extended *Terry* to include:

> "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer

in believing that the suspect is dangerous and the suspect may gain immediate control of weapons."

¶ 24    The Supreme Court noted that this conclusion was compelled by the fact that "roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Id.* However, "[a]s in *Terry*, ' "[t]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." ' " *Colyar*, 2013 IL 111835, ¶ 39 (quoting *Long*, 463 U.S. at 1050, quoting *Terry*, 392 U.S. at 27).

¶ 25    Here, the trial court denied defendant's motion based on defendant's furtive movement toward the rear pouch of the passenger seat paired with a short chase prior to defendant pulling over for the police. However, we disagree with the trial court's finding that a chase occurred in this case.

¶ 26    The testimony from the suppression hearing showed that Officer Perez observed defendant make a left turn from University onto 73rd without stopping at a posted stop sign. Officer Perez testified on direct that after he observed the vehicle disregard the stop sign, he "followed the vehicle for a couple of blocks and curbed it." Further, on cross-examination, defense counsel asked Officer Perez when he activated the lights after the stop sign, and the officer answered that "it wasn't until [he]–a couple of blocks before [he] curbed the vehicle." He then answered in the affirmative when asked if the vehicle pulled over immediately when he curbed it.

¶ 27    Based on Officer Perez's testimony, we find that he used the term "curbed" to describe the point in time when he activated the lights to pull over defendant. Officer Perez's testimony established that he followed behind the vehicle for two blocks before he "curbed" it. The testimony does not support a finding that defendant ignored the police's attempt to curb his vehicle for two blocks. Additionally, Officer Perez's trial testimony clarifies that "curb" was when he "turned on the lights and we curbed him." Officer Perez stated that he did not turn the lights on when the vehicle turned in front of him, but he followed the vehicle for "around a block." Officer Hagen testified consistently, stating that he ran defendant's license plate before the vehicle was curbed. Since the testimony at both the suppression hearing and at trial show that defendant immediately pulled over when the officers activated the lights, the trial court's factual finding at the suppression hearing that a chase occurred is against the manifest weight of the evidence.

¶ 28    Having concluded that defendant did not attempt to evade the police officers, the remaining basis for Officer Perez's search of the vehicle was defendant's furtive movement toward the rear pouch of the passenger seat. When approaching defendant's vehicle, Officer Perez testified that he observed defendant reach toward the rear pouch of the passenger seat. He did not see a firearm in defendant's hand nor did he testify that the weapon appeared in plain view. During the traffic stop, defendant was quiet and compliant with the officers' requests. It is uncontested that the police officers had a basis for the initial traffic stop after defendant failed to stop. Defendant complied when Officer Perez asked him to exit the vehicle. When asked on redirect why he asked defendant to step out of the vehicle after seeing defendant reach toward the rear of the front passenger seat, Officer Perez stated, "for officer safety." Officer Perez did not offer any articulable basis for searching the vehicle.

¶ 29    "Although furtive movements may be considered justification for performing a warrantless search when coupled with other circumstances tending to show probable cause

[citations], looks, gestures, and movements taken alone are insufficient to constitute probable cause to search since they may be innocent [citation]." *People v. Creagh*, 214 Ill. App. 3d 744, 747-48 (1991). " '[T]o constitute probable cause for an arrest or search, a "furtive gesture" such as a motorist's act of bending over inside his car must be invested with guilty significance either by specific information known to the officer or by additional suspicious circumstances observed by him.' " *People v. Collins*, 53 Ill. App. 3d 253, 255 (1977) (quoting *Gallik v. Superior Court*, 489 P.2d 573, 575 (Cal. 1971)).

¶ 30    We find the decision in *People v. Brown*, 190 Ill. App. 3d 511 (1989), instructive. There, the defendant was pulled over after speeding on Interstate 290. "As the officer approached the vehicle, he saw defendant was behind the steering wheel and another person was in the front passenger seat. Defendant reached up toward the dashboard with his right hand and then down to the floor on the passenger's side. The officer did not see any object in defendant's hand." *Id.* at 513. The defendant complied with the officer's request for his license and to step out of the vehicle. The officer conducted a pat-down search of the defendant and felt a hard object in a jacket pocket. The defendant moved his hand toward his pocket, but the officer stopped him, ordered him to put his hands on the vehicle, and pulled his service weapon. *Id.* The officer searched the defendant and found keys, sunglasses, matches, and two rolled cigarettes. The officer also searched the vehicle and found a radar detector on the floor by the passenger seat. *Id.* When asked if he observed anything unusual about the defendant prior to the pat-down, the officer only noted the movement from the dash to the floor and he did not see anything in the defendant's hand. *Id.* The trial court found that the officer had no lawful basis to search the defendant and suppressed the evidence. *Id.* at 514.

¶ 31    The reviewing court affirmed, rejecting the State's reliance on the defendant's movement in his vehicle to justify the search. "If vague movements within a traffic violator's vehicle are considered sufficient, without other facts suggesting possible danger to the officer, to conduct even a limited search of the violator's person, similar unwarranted police intrusions of this nature would surely be generated." *Id.* at 515.

¶ 32    In *Creagh*, the defendant was stopped for a routine traffic violation and subsequently charged with possession of a controlled substance. At the hearing on the defendant's motion to suppress, the police officer testified that he observed the defendant shift in his seat as if the defendant was putting something in his pants. The officer did not see the defendant's hands, just the movement of the defendant's upper body. *Creagh*, 214 Ill. App. 3d at 745-46. The officer asked the defendant to step out of the vehicle and told the defendant of the movement he observed. The defendant stated he moved a check onto the dashboard. The officer observed a bulge in the defendant's pocket and he conducted a pat-down search. He felt that the bulge was soft and did not appear to be a firearm, and he recovered several small bags of a white powder. The trial court denied the defendant's motion.

¶ 33    On appeal, the reviewing court held that the trial court erred in denying the defendant's motion to suppress evidence. The court found that the police officer lacked probable cause to search the defendant's pants pocket. "Even if defendant's movements may be characterized as 'furtive,' there was no evidence of other circumstances tending to show probable cause. [Citation.] Consequently, defendant's act of putting something in his pants pocket can clearly be viewed as innocent, and the search cannot be justified on this basis." *Id.* at 748. The court noted that the officer did not testify that he was in fear for his safety and there was no

evidence to show that the officer reasonably believed that the defendant may have been armed and dangerous. *Id*.

¶ 34 In *Collins*, 53 Ill. App. 3d 253, the defendant was charged with possession of a substance containing cannabis following a traffic stop for failing to stop at a stop sign. The officer testified at the hearing on the defendant's motion to suppress that he followed the defendant for a block and then activated his lights. The defendant continued for another half of a block before pulling over by a curb and parking outside his home. The officer stated that he saw the defendant lean forward and to the right, reaching over the passenger seat. When the officer reached the car, he asked the defendant to step out of the vehicle and stand near the rear of the car. The officer then walked toward the passenger side and observed a brown paper bag. The officer opened the door, took the bag, and opened it, finding three plastic bags of cannabis. The trial court granted the defendant's motion to suppress evidence. *Id.* at 253-54.

¶ 35 The reviewing court affirmed, concluding that "[a]s far as the record shows, defendant's car was searched only because he bent down after stopping. If we were to hold that such conduct constituted probable cause, then almost every motorist stopped for a violation of the traffic laws would be subject to having his person and automobile searched by the arresting officer." *Id.* at 256.

¶ 36 In the instant case, the articulated basis for searching defendant's car was that Officer Perez observed defendant reach toward the rear of the passenger seat. Defendant was quiet and compliant. When asked why he asked defendant to step out of the vehicle, Officer Perez simply stated, "for officer safety," but offered no other specific or articulable facts to support his belief that he feared for his safety. He never saw a firearm in defendant's hand. It is clear that the only basis used for the search was defendant's movement in the vehicle. Under an objective review, we find that based on defendant's movement in the car, there was no reasonable basis for Officer Perez to engage in a search of defendant's vehicle. Accordingly, we hold that the trial court erred in denying defendant's motion to quash arrest and suppress evidence.

¶ 37 Because we have found that defendant's motion to quash arrest and suppress evidence should have been granted, we need not reach the other issues raised on appeal.

¶ 38 Based on the foregoing, we reverse the trial court's denial of the motion to quash arrest and suppress evidence. We therefore reverse defendant's conviction and vacate his sentence. See *People v. Trisby*, 2013 IL App (1st) 112552, ¶ 19. We do so because prior to the recovery of the firearm during the unlawful search, no evidence existed that the charged offenses of AUUW and UUWF had occurred.

¶ 39 Reversed.