2020 IL App (1st) 191520-U

THIRD DIVISION
February 26, 2020

No. 1-19-1520

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| *In re* T.B., a minor, | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 19 JD 640 |
| v. | ) | |
| | ) | |
| T.B., | ) | Honorable |
| | ) | Stuart Katz, |
| Respondent-Appellant). | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's motion to quash arrest and suppress evidence was properly denied when the officers had a reasonable suspicion to engage in a *Terry* stop based on an anonymous tip and respondent's furtive movements to conceal a suspected firearm within the framework of a vehicle.

¶ 2    Respondent T.B., born July 24, 2001, was charged in a petition for adjudication of wardship with two counts of aggravated unlawful use of a weapon (AUUW) and one count of unlawful possession of firearms (UPF). Following a bench trial, respondent was adjudicated delinquent based on one count of AUUW for possession of  handgun when under the age of 21,

and one count of UPF for having possession of a firearm that was able to be concealed while under 18 years of age. The court found respondent not guilty of one count of AUUW for failure to possess a valid Firearm Owner's Identification (FOID) Card. The trial court subsequently sentenced respondent to a commitment in the Illinois Department of Juvenile Justice for an indeterminate period, when respondent turned 21 years of age or in seven years, which ever occurred sooner.

¶ 3    Respondent appeals, arguing that the trial court erred in denying his motion to quash arrest and suppress evidence because an anonymous tip and respondent's movements did not amount a reasonable suspicion that he was involved in criminal activity.

¶ 4    In May 2019, the State filed a petition for adjudication of wardship which set forth allegations for two counts of AUUW and one count of UPF. Prior to trial, respondent filed a motion to quash arrest and suppress evidence. The trial court conducted a hearing on the motion on May 28, 2019. Respondent called one witness, Officer Malcolm Brogsdale.

¶ 5    Officer Brogsdale testified that on April 30, 2019, he was on duty with a partner in an unmarked police vehicle. The officers were in plain clothes, but Officer Brogsdale's police star and firearm were visible on his waistband. At approximately 6:15 p.m., while near West 62nd Street and South State Street, the officers received a dispatch from the Office of Emergency Management and Communications (OEMC) regarding a phone call that reported a person with a gun at a Citgo gas station located at 251 West 63rd Street in Chicago. Officer Brogsdale was not given a name or contact number for the person who made the report. He testified that "they gave a description of a vehicle," but he did not recall the description.

¶ 6    Officer Brogsdale arrived at the Citgo very shortly after the call and observed a Chevy Malibu occupied by three individuals. He testified that this vehicle was the only car in the

service area by the gas pumps. There was an unoccupied car parked to the side of the gas station. Officer Brogsdale pulled into the gas station and stopped "maybe half a car length in front of his vehicle." In the Chevy vehicle, respondent was in the driver's seat. Another male was in the passenger seat while a female was in the backseat. As he drove into the gas station lot, he observed "two males make eye contact" with the officer as he approached. He did not observe any traffic infractions from this vehicle. When the officers drove into the lot, Officer Brogsdale exited quickly because "the male started moving and reaching to the ground." Officer Brogsdale observed an individual "making moves, movements, very rapid movements inside the vehicle." He approached the passenger side of the vehicle. The officer identified respondent in court as one of the individuals in the vehicle and the one making movements inside the vehicle. The officer ordered all of the occupants out of the vehicle and they were handcuffed.

¶ 7       After the occupants were handcuffed, Officer Brogsdale went to the location where he observed respondent "place an object inside the frame of the vehicle." The officer explained that he did not consider where the object was placed to be a compartment, he said it was inside the frame. He clarified that the object was not placed in the center console, but the frame that housed the gear shift and which had been propped open. He lifted the gear shift frame and he recovered a Smith & Wesson two-tone nickel and black .40-caliber handgun that was loaded with one round in the chamber. Respondent was then placed under arrest.

¶ 8       On cross-examination, Officer Brogsdale testified that he observed the passenger make a movement near his waist, but he did not see the passenger move to place an object in the frame of the car. He stated that the vehicle occupants were handcuffed for officer safety because the occupants outnumbered the officers and Officer Brogsdale believed that respondent had been concealing a weapon. The individuals were not under arrest and the investigation was still being

conducted. Officer Brogsdale went immediately to the frame and immediately found the handgun. He did not find any other objects in the frame. On redirect, Officer Brogsdale testified that he conducted his stop once he observed movement. He admitted to impeding respondent's vehicle while he was conducting a stop. When asked by the trial court if his car blocked respondent's car from exiting once the police vehicle was stopped, Officer Brogsdale answered, "Yes. As I stop. Yes." On recross, Officer Brogsdale testified that there was room enough for respondent to have driven away.

¶ 9    Following Officer Brogsdale's testimony, the parties rested on the motion to suppress. After arguments, the trial court denied the motion and made the following findings.

> "In this particular case, Officer Brogsdale through OEMC had information, a description of a car and a person with a gun in that car at the gas station. He was half a block away; and so also immediately arrived on the scene to see a car matching the description, even though that particular description was not given in court.
>
> But in the car, he saw three people. He saw two of them look directly in his direction and then start making movements. In other words, in reaction to their arrival on the scene, and saw [T.B.] in particular in the driver's seat, which means in possession of that car, making not just furtive movements; but specifically -- this is even more than a furtive movement – specifically stuffing something into a part of the car that would not normally be someplace where a person would put an object.
>
> In other words, this wasn't a storage compartment. This was the casing, or as he described it, a frame around the gear shift. That would certainly give rise to

a suspicion, a reasonable suspicion, that something – contraband or illegal was being hidden, corroborated by the fact that they had a call that these people in this car had a gun. So it was in fact corroborated.

He didn't arrest [T.B.] at that point. We're still looking at a *Terry* stop. Brought them out of the car, justifiably handcuff them both for officer safety and the safety of the public. And, again, that in itself is not an arrest. Searched exactly where he saw [T.B.] stuffing an object and found a gun, at which point he had probable cause to arrest him.

I think the officer did everything appropriately. I don't believe there's a fourth amendment violation, and the motion to suppress evidence is respectfully denied."

¶ 10    The parties then proceeded immediately to trial. The parties stipulated to the evidence and testimony already presented during the hearing on the motion to suppress. Officer Brogsdale was recalled to testify.

¶ 11    Officer Brogsdale testified that the recovered handgun had a black handle with a nickel frame and had one round in the chamber and an unknown amount in the magazine. The handgun was small enough to be concealed on one's person. At the time respondent was in possession of the handgun, he was not on his own land, abode, or fixed place of business, nor was he engaged in lawful conduct under the Wildlife Code. The handgun was made safe and kept in the care, custody and control of Officer Brogsdale and his partner until it was inventoried at the police station. At the police station, Officer Brogsdale learned that respondent was under the age of 18.

¶ 12    The State then rested.

¶ 13    D.W. testified for respondent's defense. D.W. stated that she was 17 years old at the time of the trial. She was the backseat passenger on April 30, 2019. She described the vehicle as a gray Chevrolet Impala. She was in the vehicle with T.B. and an individual called Terrell B. Terrell was in the front passenger seat. They stopped to get gas at the Citgo. She did not see anything happen before the police approached the vehicle. When the police were approaching, D.W. saw Terrell moving around in the front passenger seat. She saw a handgun in his hand. She denied seeing T.B. with a handgun before going to the Citgo or while at that location. D.W. saw Terrell put the handgun inside a part of the car. She described this location in the car as "the gear where you put the car in drive, reverse. Under – up under that." The officer then approached with his weapon out and said, "Hand up. I saw him with a weapon."

¶ 14    On cross-examination, D.W. testified that T.B. was her boyfriend of seven months and they were still in a relationship at the time of trial. She stated that she had been "raised together" with T.B. and Terrell since she was nine years old. D.W. admitted that she did not want T.B. to get in trouble. She said she was in court to help T.B., but denied being coached in her testimony.

¶ 15    T.B. then testified on his own behalf. He was 17 years old at the time of the trial and had obtained a GED. At around 6 p.m. on April 30, 2019, respondent was at the Citgo gas station near 63rd Street and Wentworth Avenue. He had previously picked up D.W. He denied handling a handgun. Respondent described the police stop,

> "Once we made it to the gas station, I got out. I got out the passenger door, went in to put the money on the gas pump; and as we was coming out, I seen [*sic*] the detective pulling in the front of us. And I was in the driver seat, and Terrell was in the passenger seat. And they ordered us to get out."

¶ 16    Respondent stated that his hands were on the steering wheel and he denied trying to conceal a handgun. He testified that Terrell was holding a handgun. Terrell was his first cousin. He saw Terrell put the handgun "under the gear changer." Respondent exited the vehicle as instructed by the police. He denied having possession of the handgun at any point in the vehicle.

¶ 17    On cross-examination, respondent testified that he did not have a valid driver's license. He denied being the driver of the vehicle from picking up D.W. to the Citgo. He admitted to being in the driver's seat at the Citgo. He denied making any movements in the vehicle as the officers approached. Respondent estimated they had been at the gas station for "about 25 seconds" before the police arrived. He had gotten out of the car and as he was walking back and got into the driver's seat as the police were pulling into the station. Both he and Terrell had exited the car. Respondent stated that they were in the process of getting gas, but never got gas for the car. Respondent denied knowing that the frame near the gear shift could move and items could be hidden in that location. He stated that he had been in the vehicle "about three times." He said the vehicle was in his name, but it was D.W.'s vehicle.

¶ 18    Respondent rested after his testimony. Following arguments, the trial court found respondent guilty of AUUW for possessing a firearm when under 21 years old and one count of UPF for possession of a handgun when under 18 years old. The court found respondent not guilty of the second count of AUUW because the State failed to prove that respondent did not have a FOID card. In its findings, the court specifically found that Officer Brogsdale testified "credibly and clearly as to what actually happened." In contrast, the court stated that it did not believe the testimony of respondent and D.W. The court noted D.W. had "motive and bias to testify falsely being the girlfriend."

¶ 19    At the June 25, 2019, sentencing hearing, the trial court sentenced respondent to the Department of Juvenile Justice for an indeterminate term, which shall terminate when he turns 21 or in 7 years, whichever comes first. At the conclusion of the hearing, the court ordered a progress hearing in five months, on November 25, 2019, and stated that if respondent does well, the court would "close your case out in five months. That means no probation, no nothing."

¶ 20    This appeal follows.

¶ 21    On appeal, respondent argues that the trial court erred in denying his motion to suppress because the anonymous tip and T.B.'s movements in the car failed to provide Officer Brogsdale with a reasonable suspicion that respondent was involved in criminal activity. The State maintains that the totality of the facts and circumstances show that the officers had a reasonable suspicion to believe respondent was armed.

¶ 22    "When reviewing the trial court's ruling on a motion to quash arrest and suppress evidence, we apply a two-part standard of review." *People v. Almond*, 2015 IL 113817, ¶ 55. We afford great deference to the trial court's findings of fact and will reverse those factual findings only if they are against the manifest weight of the evidence, but review the ultimate legal ruling as to whether the evidence should be suppressed *de novo*. *Id.* "Further, the reviewing court may consider evidence adduced at trial as well as at the suppression hearing." *People v. Richardson*, 234 Ill. 2d 233, 252 (2009). Because this was a juvenile proceeding, no posttrial motion was required to preserve the issue for appeal. *People v. Hugo G.*, 322 Ill. App. 3d 727, 738 (2001) (citing *In re W.C.*, 167 Ill. 2d 307, 318-27 (1995)).

¶ 23    "Both the fourth amendment and the Illinois Constitution of 1970 guarantee the right of individuals to be free from unreasonable searches and seizures." *People v. Colyar*, 2013 IL 111835, ¶ 31 (citing U.S. Const., amend. IV, and Ill. Const. 1970, art. I, § 6). "This court has

explained that '[t]he "essential purpose" of the fourth amendment is to impose a standard of reasonableness upon the exercise of discretion by law enforcement officers to safeguard the privacy and security of individuals against arbitrary invasions.' " *Id.* (quoting *People v. McDonough*, 239 Ill. 2d 260, 266 (2010), quoting *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979)).

¶ 24    "It is well settled that not every encounter between the police and a private citizen results in a seizure." *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006) (citing *Immigration & Naturalization Service v. Delgado*, 466 U.S. 210, 215 (1984)). "Courts have divided police-citizen encounters into three tiers: (1) arrests, which must be supported by probable cause; (2) brief investigative detentions, or '*Terry* stops,' which must be supported by a reasonable, articulable suspicion of criminal activity; and (3) encounters that involve no coercion or detention and thus do not implicate fourth amendment interests." *Id.* (citing *United States v. Black*, 675 F.2d 129, 133 (7th Cir. 1982), and *United States v. Berry*, 670 F.2d 583, 591 (5th Cir. 1982)). "In *Terry*, the [Supreme] Court held that a brief investigatory stop, even in the absence of probable cause, is reasonable and lawful under the fourth amendment when a totality of the circumstances reasonably lead the officer to conclude that criminal activity may be afoot and the subject is armed and dangerous." *Colyar*, 2013 IL 111835, ¶ 32 (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Further, in *Michigan v. Long*, 463 U.S. 1032, 1049 (1983), the Supreme Court recognized that roadside encounters by police are "especially hazardous" and extended *Terry* to include a protective search of a passenger compartment of a vehicle during an investigatory stop. The Court held that the search, "limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably

warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Id*.

¶ 25 "For a stop to be justifiable under *Terry*, the officer must present specific, articulable facts which would cause a reasonable person to fear for his safety or the safety of others." *People v. Anderson*, 304 Ill. App. 3d 454, 462 (1999). "Absent such circumstances, a warrantless search is unreasonable and the testimony by an officer that he subjectively feared for his safety, standing alone, does not satisfy this requirement." *Id.* "When reviewing the officer's action, we apply an objective standard to decide whether the facts available to the officer at the time of the incident would lead an individual of reasonable caution to believe that the action was appropriate." *Colyar*, 2013 IL 111835, ¶ 40. "As in *Terry*, ' "[t]he issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger." ' " *Colyar*, 2013 IL 111835, ¶ 39 (quoting *Long*, 463 U.S. at 1050, quoting *Terry*, 392 U.S. at 27). The Illinois legislature has codified the *Terry* standard in section 107-14 of the Code of Criminal Procedure of 1963 (Code). 725 ILCS 5/107-14 (West 2012) (a peace officer, after identifying himself, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit, or has committed an offense). Additionally, the legislature has allowed for a limited patdown by a police officer during a *Terry* stop. 725 ILCS 5/108-1.01 (West 2012) (when a peace officer has made a *Terry* stop "and reasonably suspects that he or another is in danger of attack, he may search the person for weapons.")

¶ 26 Respondent contends that he was seized when the officers blocked his car when they pulled into the gas station, and at that point, the officers lacked a reasonable suspicion to conduct a *Terry* stop. According to respondent, his liberty was restrained when the officers stopped their

car directly in front of respondent's vehicle, which blocked respondent's vehicle. Respondent asserts that Officer Brogsdale restrained respondent's movement and exhibited a show of authority in this action, and thus, he was seized at the time.

¶ 27    "For purposes of the fourth amendment, an individual is 'seized' when an officer ' "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." ' " *Luedemann*, 222 Ill. 2d at 550 (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991), quoting *Terry*, 392 U.S. 1, 19 n. 16 (1968)). Factors that may be indicative of a seizure include "(1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) some physical touching of the person of the citizen; and (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id*. at 553 (citing *U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980)). However, these factors are not exhaustive, and the supreme court noted that factors indicating the seizure of a parked vehicle could include " 'boxing the car in, approaching it on all sides by many officers, pointing a gun at the suspect and ordering him to place his hands on the steering wheel, or use of flashing lights as a show of authority.' " *Id*. at 557 (quoting 4 W. LaFave, Search & Seizure § 9.4(a), at 434–35 (4th ed. 2004)).

¶ 28    The evidence in this case does not support a seizure having occurred when the officers initially pulled into the gas station. However, a *Terry* stop occurred very quickly after the officers arrived at the gas station. Officer Brogsdale testified that he pulled into the gas station and stopped in front of respondent's vehicle. He stated that the police vehicle was approximately a half car length in front of respondent's vehicle and that respondent could have driven away. Officer Brogsdale testified that as he pulled into the gas station he made eye contact with respondent and the passenger, and then observed respondent "reaching to the ground" and

making "very rapid movements inside the vehicle." Respondent's argument that a seizure occurred when the officers first parked at the gas station fails to consider Officer Brogsdale's testimony that he immediately observed respondent moving inside the vehicle, which prompted the officer to quickly exit his vehicle and order the occupants out of their car. As he approached, Officer Brogsdale further observed respondent place an object within the framework housing the gear shift of the vehicle. The parking of the vehicle cannot be considered in isolation when respondent's movements prompted Officer Brogsdale's subsequent conduct.

¶ 29    Respondent recognizes as an alternative that a seizure occurred when Officer Brogsdale ordered the occupants out of the car, but asserts that the officer lacked reasonable suspicion to seize respondent at that time. Respondent contends that the anonymous tip to OEMC that a person at the Citgo possessed a gun paired with respondent's movements immediately upon the officers' arrival was not sufficient to support a reasonable suspicion to seize respondent for a *Terry* stop.  However, respondent relies on case law in which solely an anonymous tip or solely furtive movements were the basis for a *Terry* stop, but fails to cite any authority in which an anonymous tip paired with furtive movements did not amount to a reasonable suspicion. Thus, the cases are distinguishable for this reason. Moreover, the reasonableness of a search and seizure under the fourth amendment is "measured in objective terms by examining the totality of the circumstances." *People v. Moss*, 217 Ill. 2d 511, 518 (2005). Neither the anonymous tip nor the furtive movements occurred in isolation and must be considered together within the entirety of the circumstances.

¶ 30    Respondent relies on the Supreme Court's decision in *Florida v. J.L.*, 529 U.S. 266 (2000), to support his argument that an anonymous tip cannot provide reasonable suspicion to seize an individual. There, the police received an anonymous tip via telephone that a young

12

African-American male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. *Id.*, at 268. Based on that tip, officers arrived at the specified bus stop and observed three African-American males, one of whom was wearing a plaid shirt, standing there. *Id.* Although the defendant, who was in the plaid shirt, made no threatening or otherwise unusual movements and officers did not see a firearm, "an officer instructed him to place his hands up on the bus stop and frisked him," seizing a gun from his pocket. *Id.* The Supreme Court held that the anonymous tip at issue, without more, was insufficient to justify a *Terry* stop. *Id.* In doing so the court reasoned that in certain situations an anonymous tip, suitably corroborated, exhibits "sufficient indicia of reliability to provide reasonable suspicion" to make a *Terry* stop, and found that no such corroboration was present in the case before it. *Id.*, at 270-72.

¶ 31     Respondent then relies on *People v. Smith*, 2015 IL App (1st) 131307, to argue that his movements did not justify the search of his vehicle. In *Smith*, this court found the search of the defendant's vehicle was improper. There, the defendant was stopped for making a left turn without stopping at a stop sign. As the officer approached the vehicle, he observed the defendant make a movement toward the rear of the passenger seat, but did not see a weapon. The defendant was quiet and compliant. The officer offered no specific or articulated facts other than "officer safety" to support why he asked the defendant to exit his vehicle with no explanation for the search of the vehicle, which yielded the recovery of a firearm. *Id.* ¶ 28. We concluded there was no reasonable basis for the officer to engage in a search of the vehicle and reversed the denial of the defendant's motion to suppress. *Id.* ¶ 36.

¶ 32     Unlike the circumstances in *J.L.* and *Smith*, the totality of the circumstances in this case supports a finding that a reasonable person in Officer Brogsdale's position would have a reasonable suspicion that respondent may have been concealing a weapon and was a threat to the

officers and the public. Officer Brogsdale had both an anonymous tip and furtive movements to support a *Terry* stop. Officer Brogsdale testified that the caller gave a description of the vehicle, but he did not recall the description. Upon arrival at the Citgo, the officer saw only one vehicle in the area of the gas pumps, a gray Chevrolet. As the officers pulled into the station, Officer Brogsdale made eye contact with respondent and the front seat passenger and then he observed respondent make "very rapid movements." As he approached, Officer Brogsdale then observed respondent place an object within the gear shift framework of the vehicle. Officer Brogsdale was clear in his testimony that the object was not placed in a common storage location in the vehicle, such as the center console, but was within the casing of the gear shift. He ordered the occupants out of the car and handcuffed them for "officer safety" because the passengers outnumbered Officer Brogsdale and his partner and he believed a weapon had been concealed. Officer Brogsdale then went to where the gear shift was located, lifted the frame, and recovered a firearm. Officer Brogsdale then placed respondent under arrest.

¶ 33    We conclude that, taken together, the anonymous tip and respondent's movements with placing an object within the frame of the vehicle provided a sufficient basis for Officer Brogsdale to have a reasonable suspicion of criminal activity and to proceed with a *Terry* investigative stop. It was at that point that respondent was seized and Officer Brogsdale proceeded with his investigation. Officer Brogsdale articulated his basis for ordering the passengers from the car and then in adherence with *Long*, his search was limited to the location where he observed respondent place an object in the frame of the vehicle. He testified that the firearm was the only object placed in that location. Further, in contrast with *Smith*, defendant's movement to conceal an object in the gear shift frame of the vehicle is markedly different from reaching behind a passenger seat.

14

¶ 34    Finally, we reject respondent's contention that the tip did not describe an illegal act because the possession of a firearm is not *per se* criminal and Officer Brogsdale did not know respondent was a minor and lacked a FOID card. This court has recently held that the possession of a firearm in one's hand is not in compliance with the Concealed Carry Act and "a reasonably cautious person could have believed that the defendant had committed a crime, unlawful use of a weapon." *People v. Balark*, 2019 IL App (1st) 171626, ¶ 68. Another division of this court also recently found that a defendant's "efforts to conceal and toss the gun were sufficient to provide the officers with a reasonable suspicion that he was not in lawful possession of the gun." *People v. Hood*, 2019 IL App (1st) 162194, ¶ 71. Here, Officer Brogsdale observed respondent conceal a suspected weapon inside the frame of the gear shift and such actions supports the reasonable suspicion that respondent was not in lawful possession of the firearm.

¶ 35    Accordingly, we find that the trial court properly denied respondent's motion to quash arrest and suppress evidence. The evidence presented at the hearing and the trial established that Officer Brogsdale had sufficient information to form a reasonable suspicion that respondent was engaged in criminal activity. Thus, the subsequent *Terry* investigative stop was proper.

¶ 36    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 37    Affirmed.