2022 IL App (1st) 200375-U

FIRST DISTRICT,
FIRST DIVISION
May 23, 2022

No. 1-20-0375

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 18 CR 10031 |
| | ) | |
| STACY NORRIS, | ) | Honorable |
| | ) | Joan Margaret O'Brien, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Hyman and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1       *Held*:  Defendant's conviction for armed habitual criminal is reversed and the case is remanded for a new trial where the trial court abused its discretion in excluding evidence of flight consistent with defendant's innocence.

¶ 2       Following a jury trial, defendant Stacy Norris was convicted of armed habitual criminal and sentenced to 8 years' imprisonment. On appeal, defendant argues that (1) his trial counsel was ineffective for failing to file a motion to suppress evidence recovered during a vehicle search, (2) his trial counsel was ineffective for failing to include certain recorded hearsay statements in a pretrial motion *in limine*, and (3) the trial court erred when it limited the scope of the sole defense witness's testimony. For the reasons that follow, we reverse and remand for a new trial.

¶ 3                                                    BACKGROUND

¶ 4         The evening of June 28, 2018, defendant was driving a green Toyota Camry Solara near 91st Street and South Colfax Avenue. While on patrol at about 8:20 p.m., Chicago Police Officers David Marinez and Rafael Razo observed defendant using a cell phone while driving. When defendant failed to make a complete stop at a stop sign, Razo activated their "lights and sirens" to curb the vehicle. Defendant proceeded to pull over at the mouth of an alley on Colfax.

¶ 5         Marinez saw defendant "reaching into his side or his pockets retrieving something" but was unable to see what he retrieved or whether he opened the center console. Marinez alerted his partner that defendant was "making mo[v]ements from his side to the center console." As the officers exited their vehicle, defendant drove off down the alley.

¶ 6         The officers followed defendant through the alley for about 15 seconds. Defendant pulled into a garage at 9135 South Colfax. The officers exited their vehicle and ordered him out of his car. Defendant complied but exited holding a glass juice bottle. The officers ordered defendant to put his hands on the hood of the SUV "for safety purposes" because they believed defendant "could be armed *** due to everything that had happened." Defendant did not immediately put the glass bottle down, but eventually placed his hands on the hood of the SUV.

¶ 7         Razo began searching the defendant's vehicle. After first searching the driver's seat, he was directed to the other side of the vehicle by Marinez, where he ultimately recovered a loaded handgun from the center console.

¶ 8         This incident was recorded on video from the officers' squad car camera and Razo's body-worn camera. The audio and video from both cameras was admitted into evidence without objection and published to the jury. Although defendant's movements are not clear in the squad car footage, one of the officers can be heard saying "He's reaching for something." Marinez explained that his elevated position in passenger seat of the SUV enabled him to look downward

through the rear windshield of the Toyota and observe defendant appear to retrieve something from his pockets and place it in the center console of his vehicle.

¶ 9        The parties stipulated to defendant's two prior qualifying felony convictions.

¶ 10      Prior to testifying on her husband's behalf, the trial court admonished Paris White about the danger of self-incrimination. The judge was concerned because White did not have a Concealed Carry License. After speaking with an Assistant Public Defender in the courtroom, White testified that she owned the Toyota defendant was driving at the time of his arrest, but she did not allow him to drive her car because his license was suspended. Defense counsel followed up by asking, "Something happen to your car prior to June 28, 2018, that you wouldn't let him drive your car then?" The State objected to this question and a sidebar conference was held outside the presence of the jury.

¶ 11      At the sidebar, defense counsel made an offer of proof that White was going to testify that the last time she let defendant drive her car, it was impounded because he did not have a driver's license. The trial court questioned the relevance of this information since defendant was shown on video driving the vehicle. Defense counsel responded that it was "relevant in regards to her reason why she doesn't allow him to drive the car." The trial court ruled that the evidence was not relevant "to any of the elements of the offense or to the defense that it's her car."

¶ 12      White subsequently testified that her father had given her the gun recovered in her car for "protection" a few days prior to the incident. She never told defendant about the gun or that it was in her vehicle, despite knowing that defendant was not allowed to be around firearms because he is a convicted felon. White admitted that she did not have a Concealed Carry License but explained that she kept the gun unloaded in the center console and the gun's magazine in the glove compartment.

¶ 13    The jury found defendant guilty of armed habitual criminal and he was sentenced to a term of 8 years' imprisonment.

¶ 14                                          ANALYSIS

¶ 15                              Ineffective Assistance of Counsel

¶ 16    Defendant first argues his trial counsel was ineffective for failing to file a motion to suppress the gun and ammunition found in the vehicle and for failing to move *in limine* to exclude statements captured on the videos from the squad car and body-worn cameras. The State responds that defendant cannot meet his burden under *Strickland v. Washington*, 466. U.S. 668 (1984).

¶ 17    To establish ineffective assistance of counsel under *Strickland*, a defendant must show that counsel's performance was objectively unreasonable and that the deficient performance prejudiced the defendant. *People v. Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland*, 466 U.S. at 694). A defendant's "[f]ailure to make the requisite showing of either deficient performance or sufficient prejudice defeats the claim." *People v. Flowers*, 2015 IL App (1st) 113259, ¶ 41. To satisfy the deficiency prong, the defendant must show that his counsel's performance was so deficient that counsel "was not functioning as the 'counsel' guaranteed by the sixth amendment." *People v. Easley*, 192 Ill. 2d 307, 317 (2000). "The defendant must overcome the strong presumption that the challenged action or inaction might have been the product of sound trial strategy." *Id.*

¶ 18    Where it is "easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *** that course should be followed." *Strickland*, 466 U.S. at 697. To demonstrate prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Domagala*, 2013 IL 113688, ¶ 36. A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶ 19 Defendant argues that his trial counsel was objectively unreasonable in failing to file a motion to suppress the gun and ammunition recovered in the Toyota. The decision of whether to file a motion to suppress is a matter of trial strategy and entitled to great deference. *People v. Bew*, 228 Ill. 2d 122, 128 (2008). Counsel cannot be deemed ineffective if the motion would have been futile. *People v. Givens*, 237 Ill. 2d 311, 331 (2010).

¶ 20 Under the fourth amendment of the United States Constitution, individuals have the right to be secure against unreasonable searches and seizures. U.S. Const., amend. IV. Under *Terry v. Ohio*, 392 U.S. 1, 27 (1968), the United States Supreme Court held that during an investigatory stop, an officer may conduct "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry*, 392 U.S. at 27; see also *People v. Close*, 238 Ill. 2d 497, 505 (2010) (noting this Court follows the principles set forth in *Terry v. Ohio*). The officer need not be "absolutely certain" the individual is armed, and the issue is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.

¶ 21 In determining whether the officer acted reasonably, a reviewing court must give weight to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience, but not to any "inchoate and unparticularized suspicion or 'hunch.'" *Id.* A protective search under *Terry* may extend to a search of the passenger compartment of an automobile "limited to those areas in which a weapon may be placed or hidden." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). A *Terry* search is permissible if the police officer reasonably believes, based on specific and articulable facts, taken together with reasonable inferences from those facts, that the suspect is dangerous and may gain immediate control of weapons. *Id.*; see also *People v. Colyar*, 2013 IL 111835, ¶ 38 ("Explaining its decision, the *Long* court noted that roadside encounters are

'especially hazardous,' and a police officer may reasonably believe that he is in danger from the possible presence of accessible weapons inside the vehicle.").

¶ 22    In reviewing an officer's actions, this Court applies an objective standard to decide whether the facts available to the officer at the time of the incident would lead an individual of reasonable caution to believe the action was appropriate. *Colyar*, 2013 IL 111835, ¶ 40. The court analyzes these actions based on the totality of the surrounding circumstances. *People v. Moss*, 217 Ill. 2d 511, 527 (2005). "Although we must apply an objective standard, 'the testimony of an officer as to his subjective feelings is one of the facts which we may consider in the totality of the circumstances known to the officer at the time of the [search].' " *People v. Johnson*, 2019 IL App (1st) 161104, ¶ 20 (quoting *People v. Galvin*, 127 Ill. 2d 153, 168 (1989)).

¶ 23    Defendant does not dispute that "a vehicle stop based on an officer's observation of a traffic violation is valid at its inception." *Moss*, 217 Ill. 2d at 527 (citing *People v. Gonzalez*, 204 Ill. 2d 220, 228-29 (2003)). Rather, defendant challenges the subsequent search of his car, premised on the officers' belief that he had a firearm. He argues that the only reason the officers had to believe he was armed and dangerous was Marinez's observation of defendant's alleged furtive movements in the car, which this Court has held to be insufficient to justify the search of a vehicle. See *People v. Smith*, 2015 IL App (1st) 131307, ¶ 36.

¶ 24    We find that Razo had a sufficient basis to search defendant's car based on the totality of the circumstances. "[M]ovements taken *alone* are insufficient to constitute probable cause to search since they may be innocent." (Emphasis added.) *People v. Creagh*, 214 Ill. App 3d 744, 747-48 (1991). However, furtive movements "may be considered justification for performing a warrantless search when coupled with other circumstances tending to show probable cause." *Smith*, 2015 IL App (1st) 131307, ¶ 29. Here, the evidence shows that the officers relied on more than furtive movements as a basis to search defendant's car.

¶ 25    Marinez testified that during the initial stop of defendant's vehicle, he was able to see defendant reach to the right side of his body, retrieve something, and "appear to be placing it in the center console of his vehicle." As the officers were exiting their vehicle, defendant drove off down the alley. Marinez testified that "based on [his] experience, when a car takes off on you *** it elevates your high risk" that the driver is hiding something. After defendant pulled into a garage, he was ordered to get out of his car and place his hands on the hood of the police SUV for "safety purposes." In response, defendant exited the vehicle holding a glass bottle which he did not immediately place on the ground, despite being ordered to do so. Given these circumstances, we find the officers' observations were sufficient to justify searching the vehicle.

¶ 26    Relying on *Arizona v. Gant*, 556 U.S. 332 (2009), defendant argues that, because he was out of reach of the vehicle at the time of the search, there was no safety reason to search the vehicle for the weapon. He urges review as a search incident to arrest. We find *Gant* inapposite. In *Gant*, the police searched the passenger compartment of a vehicle pursuant to the lawful, custodial arrest of the driver. *Gant*, 556 U.S. at 336. The Court held that the search was not justified under the search-incident-to-arrest doctrine where the driver was handcuffed and secured in a squad car before the search. *Id.* at 343-44. However, the Court observed that other established exceptions to the warrant requirement authorize a vehicle search "under additional circumstances when safety or evidentiary concerns demand." *Id.* at 346 (citing *Long*, 463 U.S. at 1049).

¶ 27    In *Long*, the Court extended *Terry* to include "the search of the passenger compartment of an automobile" and "those areas in which a weapon may be placed or hidden." *Long*, 463 U.S. at 1049. The safety concerns supporting this type of search are not dissipated simply because an individual is temporarily detained outside the vehicle. As the Court observed in *Long*, an officer does not act unreasonably in taking "preventive measures" to ensure that there are no weapons

within the detained individual's "immediate grasp before permitting him to reenter his automobile." *Id.* at 1051.

¶ 28    In this case, the totality of the circumstances known to the officers at the time of the search led them to reasonably believe that defendant "could be armed." Although defendant was detained outside of his vehicle during the search, he was not handcuffed or secured inside a police vehicle. We cannot say that Officer Razo acted unreasonably in taking preventative measures to ensure that defendant did not have a weapon in his immediate control by searching the front seats and center console of the vehicle.

¶ 29    Because it is not reasonably probable that a motion to suppress would have been granted, counsel was not ineffective for failing to file such a motion. It follows that defendant cannot establish a reasonable probability that, but for defense counsel's alleged unprofessional error, the result of the proceeding would have been different. Thus, his ineffective assistance of counsel claim fails. See *Strickland*, 466 U.S. at 694.

¶ 30    Defendant also contends that his trial counsel was ineffective for failing to move to exclude statements captured on the videos from the squad car and body-worn cameras. The State responds that the statements at issue were either admissible as an excited utterance or strategically unchallenged by defense counsel.

¶ 31    At issue are eight statements made by Marinez and depicted on video from the squad car camera and body-worn camera, including: (1) "He's reaching for something," (2) "Hey Razo, on the other side he reached for something," (3) "What's in your car? I saw you," (4) "I saw you dropping something," (5) "Ok, what were you putting—?" and (6) "I saw you leaning again."

¶ 32    The parties dispute what Marinez said in the final two recorded statements. Defendant hears "What were you putting in the side? I saw you reaching," and "Remember I told you as we stopped he leaned." The State hears Marinez say "What were you putting on the side? I saw you

leaning," and "Remember, I told you as we stopped he's…he's putting…he's leaning?" respectively.

¶ 33     Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Oct. 15, 2015); *People v. Collins*, 2020 IL App (1st) 181746, ¶ 23. Such statements are generally inadmissible unless an exception applies. Ill. R. Evid. 802 (eff. Jan. 1, 2011); Ill. R. Evid. 803 (eff. Sept. 28, 2018).

¶ 34     The State asserts that one of the statements, "He's reaching for something," was admissible under the excited utterance exception to the rule against hearsay. The State concedes that the other statements are hearsay, but argues that defendant's trial counsel made the strategic decision not to challenge their admission. We find it unnecessary to make either determination since defendant cannot demonstrate prejudice from his counsel's inaction.

¶ 35     All of the information being challenged was also established through the live testimony of Marinez and Razo. See *People v. Abram*, 2016 IL App (1st) 132785, ¶ 76 (Finding that the defendant suffered no prejudice because there was no information contained in the disputed statements that was not also established by live testimony); see also *People v. Songer*, 229 Ill. App. 3d 901, 906 (1992) ("Reversal for improperly admitted hearsay evidence is not warranted where properly admitted evidence proves the same matter."). Based on the evidence properly presented at trial, there is not a reasonable probability that the outcome would have been different absent admission of these statements. *People v. Davis*, 2017 IL 142263, ¶ 57. Therefore, defendant cannot meet his burden under *Strickland* to show that he was prejudiced by counsel's failure to file a motion to exclude these statements.

¶ 36                              Right to Present a Defense

¶ 37　　　　Finally, defendant argues that he "was denied his constitutional right to present a defense" where the trial court barred Paris White from testifying that her car had been impounded the last time defendant used it. According to defendant, this evidence explained why defendant was not allowed to drive his wife's car, was "directly relevant to an element of the charge and [his] theory of the defense," and "would have offered the jury an alternative, innocent explanation for why [he] drove away" at the first traffic stop, *i.e.*, that he left so his wife's car would not get towed again, not because he was attempting to hide a gun.

¶ 38　　　　The State maintains that defendant has forfeited this claim by failing to adequately articulate that White's testimony was relevant "to support an inference that the reason defendant fled was because the car had been previously impounded when defendant was driving it." At trial, defendant asserted that the barred evidence was relevant because the "last time [White] let him drive the vehicle, it was impounded because he didn't have a license." In his posttrial motion, defendant again alleged, "The circuit court erred when it sustained the prosecutions [*sic*] objection to the defense question of Paris White as to if she did not allow the Defendant to drive her vehicle because her car had been towed 2 months prior to the defendant's arrest when Defendant was arrested for driving on a suspended license." Nothing more was required in order to preserve this issue for our review *People v. Minter*, 2015 IL App (1st) 120958, ¶ 43.

¶ 39　　　　A criminal defendant is constitutionally guaranteed a meaningful opportunity to present a complete defense. *People v. Ramirez*, 2012 IL App (1st) 093504, ¶ 43. This includes the right of the defendant to present witnesses in his own defense. *People v. Lerma*, 2016 IL 118496, ¶ 23. A defendant also has the right "to show, by any competent evidence, facts which tend to prove that he did not leave the scene of the crime from a consciousness of guilt." *People v. Autman*, 393 Ill. 262, 266-67 (1946). Defendant claims that, although a judge's ruling on evidentiary matters is ordinarily reviewed for an abuse of discretion, the question of whether a defendant's right to

present a defense was violated is a purely legal issue and should be reviewed *de novo*. We disagree. Where, as here, "a party claims he was denied his constitutional right to present a complete defense due to improper evidentiary rulings, the standard of review is abuse of discretion." *People v. Burgess*, 2015 IL App (1st) 130657, ¶ 133.

¶ 40 The evidence showed that defendant stopped at the mouth of the alley when the police officers activated their lights and sirens but drove off as the officers were approaching his vehicle. Defendant drove down the alley and pulled into a garage. Officer Razo acknowledged that defendant was not speeding and only drove a short distance. The trial court's ruling prevented defendant from explaining to the jury why he fled from the police. Without this crucial testimony, defendant was unable to counter the State's theory that he fled because "he knew he couldn't have the gun. He knew it was illegal." While it is plausible that defendant's flight from the initial stop showed consciousness of guilt, it is equally plausible that defendant was simply driving home to avoid a repeat towing of his wife's car. See *People v. Davis*, 193 Ill. 2d 127, 131 (1963) ("[F]light is not always dictated by an impulse or purpose to escape the consequences of acts done and, in some instances, is equally or more consistent with some other hypothesis."). Under these circumstances, we find that the trial court abused its discretion in limiting the testimony of Paris White.

¶ 41 We next consider whether limiting White's testimony was harmless error. See *People v. Thompson*, 238 Ill. 2d 598, 611 (2010) ("Harmless-error analysis is conducted when a defendant has preserved an issue for review."). An error may be deemed harmless beyond a reasonable doubt if other evidence against the defendant is so overwhelming that there is no doubt of the defendant's guilt. *People v. Wilkerson*, 87 Ill. 2d 151, 157 (1981). In this case, the other evidence of defendant's guilt was not overwhelming.

¶ 42      To prove defendant guilty of armed habitual criminal as charged in this case, the State was required to show that he possessed the gun. See 720 ILCS 5/24-1.7(a) (West 2018). The gun was not recovered from defendant's actual possession, so to show constructive possession the State was required to demonstrate that defendant: (1) knew of the weapon's presence and (2) exercised control over the area where the weapon was found. *People v. Hunter*, 2013 IL 114100, ¶ 19. The State relied primarily on defendant's flight to establish these elements. In his opening statement, the prosecutor told the jury the evidence would show that defendant "fled from the police because he's a convicted felon who had a handgun in the vehicle he was driving." In his closing argument, the prosecutor told the jurors the evidence had shown, as follows:

> "[T]here is a good reason why this defendant, a two-time convicted felon, fled from the scene of that initial traffic stop. He knew he couldn't have the gun. He knew it was illegal. He knew he needed to make some distance between the gun and him. So he took it out of his pocket, tried to hide it in the console, took off speeding up the alley hoping to get to his garage before the officers could catch up with him and find the gun.
>
> He did that because he knew he was guilty. It's called consciousness of guilt. That's evidence that you should consider in this case."

¶ 43      Without White's testimony about the previous towing of her vehicle, defendant was unable to explain his flight, which undermined his entire defense. We find that there is a reasonable probability that White's testimony would have altered the trial's outcome. Therefore, we reverse and remand for a new trial.

¶ 44      Retrial raises double jeopardy concerns, and we are therefore required to assess the sufficiency of the evidence against defendant. *People v. Lopez*, 229 Ill. 2d 322, 367 (2008). After viewing the evidence presented at trial in the light most favorable to the State, we find that a

rational trier of fact could have found defendant guilty beyond a reasonable doubt. *Id.* Accordingly, there is no double jeopardy impediment to retrial.

¶ 45                                        CONCLUSION

¶ 46          For the foregoing reasons, we reverse defendant's conviction for armed habitual criminal and remand the cause to the circuit court for a new trial.

¶ 47          Reversed and remanded.