**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 220057-U

Order filed December 26, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-22-0057 Circuit No. 19-CF-1046 |
| TREMAINE D. JYLES, | ) ) ) | Honorable Ann Celine O'Hallaren Walsh, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice McDade and Justice Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  Trial counsel did not provide ineffective assistance for failing to file a motion to suppress evidence.

¶ 2    Defendant, Tremaine D. Jyles, appeals from his conviction for unlawful possession of a controlled substance. Defendant argues that trial counsel provided ineffective assistance where he failed to file a motion to suppress evidence. We affirm.

I. BACKGROUND

¶ 4        On May 18, 2019, the State charged defendant with unlawful possession of less than 15 grams of a controlled substance (720 ILCS 570/402(c) (West 2018)). The case proceeded to a six-person jury trial.

¶ 5        Detective Jeremy Womack of the Naperville Police Department testified that he was assigned to the Special Operations Group which investigated vice and narcotics-related activities. Womack testified that he had been an officer for approximately nine years and had been working as a detective for the past five years. During this time, he had undergone specialized training in surveillance and narcotics. At approximately 9:30 p.m. on May 2, 2019, Womack was in an unmarked squad car surveilling the area of Route 59 and Brookdale Road. He observed a silver sedan enter the drive-thru lane of the Chase Bank automated teller machine (ATM). It was dark outside, but the parking lot was artificially lit. The sedan stopped short of the ATM, and a man exited the rear passenger seat and approached the ATM.

¶ 6        Womack observed another man with a backpack, whom he identified in court as defendant, walk up and approach the man who had just used the ATM. Womack indicated that the two men appeared to greet one another as if they were acquainted and then engaged in a hand-to-hand drug transaction. Womack explained that a hand-to-hand drug transaction "is when two people meet and exchange drugs for money. It usually consists of two handshakes consecutive with each other with the person selling the drugs handing it to the person buying them and the person buying handing the person selling the money." Womack testified that he had attended various narcotics-related training courses throughout his career, including a 40-hour undercover narcotics course, and had the opportunity to personally observe over 50 hand-to-hand drug transactions. Specifically, on the evening of May 2, 2019, Womack observed "both of the males shake each

other's hands twice." The meeting lasted 15 to 20 seconds, after which the man who used the ATM reentered the silver sedan, which drove off, and defendant left on foot. Womack continued to surveille defendant for another two to three minutes until defendant entered a residence adjacent to the Chase Bank.

¶ 7      Defendant exited the residence a brief time later without his backpack and entered the passenger side of a dark-colored sports utility vehicle (SUV) that was parked on the street. Womack and Detective Chris Giglio followed the SUV in separate vehicles as it drove north on Route 59 in the center lane. As they approached the Interstate 88 overpass, the SUV moved to the right lane without signaling. Giglio initiated a traffic stop. Giglio pulled directly behind the SUV and Womack parked behind Giglio. Womack indicated that he and Giglio approached the SUV in a staggered fashion. Giglio approached first on the driver's side. Shortly thereafter, Womack approached on the passenger's side.

¶ 8      Womack testified that he observed defendant making furtive movements. He described the movements, stating that he saw "defendant with both of his arms reach behind him trying to conceal or retrieve an object from behind the driver's seat or center console area of the car." As Womack approached, defendant continued to move in the same fashion. Womack told defendant to stop moving. Defendant continued to move. Womack opened the passenger door and again told defendant to stop moving and exit the SUV. Defendant complied. Womack located $848 in defendant's pocket. Defendant indicated that the money was from his tax refund. Defendant admitted to Womack that he was not employed. Womack testified that Giglio located a small digital scale with white powder residue on the scale. Defendant denied knowing anything about the scale. Womack did not personally see defendant in possession of the scale.

3

¶ 9    Giglio testified that he was also assigned to the Special Operations Group with the Naperville Police Department. On May 2, 2019, he responded to Womack's call regarding his observation of a potential drug transaction. As he arrived at Womack's location, he observed a dark-colored SUV turning northbound onto Route 59. Giglio followed the SUV, visually observing it the entire time. Giglio testified that he observed the SUV move from the center lane to the right lane without using its turn signal. Nothing impeded Giglio's view of the SUV. He initiated a traffic stop and parked behind the SUV. Giglio exited his vehicle and approached the driver's side of the SUV. Womack parked behind Giglio shortly after the initiation of the traffic stop.

¶ 10    The SUV's windows were down as Giglio approached. Giglio saw defendant sitting in the passenger seat. While he was at the door jamb of the rear driver's side door, approximately five or six feet from defendant, Giglio observed that defendant held an item, that appeared to be a small, black, digital scale in his lap. He described that defendant "abruptly grabbed [the item] and turned over his left shoulder and placed it behind the driver's seat." After this, Giglio continued forward and met with the driver. Eventually, Giglio and Womack instructed both the driver and defendant to exit the SUV. Giglio explained that they had the occupants exit the SUV due to Womack's observations at the Chase Bank, Giglio's observations of defendant hiding a scale, and the driver providing Giglio with what he believed to be a false name.

¶ 11    Giglio searched the SUV and located the black scale behind the driver's seat along with a box for the scale. Giglio informed Womack of his findings then sealed the scale into an envelope. While Giglio was present, Womack field-tested the residue on the scale. He placed it into an evidence locker at the police station. The scale was sent to the Illinois State Police crime laboratory. A forensic scientist tested the residue on the scale, which was identified as cocaine.

4

¶ 12 In closing, defense counsel argued, *inter alia*, that the witnesses were not credible, including challenging Giglio's ability to see the small scale on defendant's lap in the dark. The jury found defendant guilty. Defendant was sentenced to 18 months' imprisonment. Defendant appealed.

¶ 13                                                 II. ANALYSIS

¶ 14 On appeal, defendant argues that trial counsel provided ineffective assistance where he failed to file a motion to suppress the evidence discovered during the pretextual traffic stop when he was only a passenger of the vehicle. Additionally, defendant asserts that such a motion would have shown the police did not possess the probable cause necessary to search the vehicle.

¶ 15 Claims of ineffective assistance of counsel are measured against the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on a claim of ineffective assistance, defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and that the deficient performance prejudiced defendant. *Id.*

> "To establish defendant's prejudice resulting from counsel's failure to file a motion to suppress evidence, a defendant must show that: (1) the unargued suppression motion is meritorious (*i.e.*, would have succeeded); and (2) there is a reasonable probability that the outcome of the trial would have been different had the evidence been suppressed." *People v. Tayborn*, 2016 IL App (3d) 130594, ¶ 17 (citing *People v. Henderson*, 2013 IL 114040, ¶¶ 12, 15).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[F]ailure to satisfy either prong precludes a finding of ineffective assistance of counsel." *People v. Patterson*, 192 Ill. 2d 93, 107 (2000).

5

¶ 16    The fourth amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. A warrantless search is presumptively unreasonable unless it falls within a recognized exception. *People v. Cregan*, 2014 IL 113600, ¶ 25. One such exception is the "automobile exception" under which police officers may, during a valid traffic stop, search a vehicle for contraband or other evidence of criminal activity, if probable cause has developed to believe the vehicle contains such evidence. *People v. Contreras*, 2014 IL App (1st) 131889, ¶ 28. Here, the validity of the traffic stop was unquestionable. Both detectives testified that the driver of the vehicle was travelling in the center lane of Route 59 and moved into the right lane without signaling. Accordingly, probable cause existed to believe that the driver violated section 11-804(b) of the Illinois Vehicle Code (625 ILCS 5/11-804(b) (West 2018)), providing a valid basis for the traffic stop.

¶ 17    However, merely stopping an automobile for a minor traffic violation does not justify the search of a detained person or vehicle. *People v. Jones*, 215 Ill. 2d 261, 271 (2005). Probable cause is required for the warrantless search of a vehicle. *People v. Hill*, 2020 IL 124595, ¶ 22. To establish probable cause, the totality of the facts and circumstances known to the officer at the time of the search must sufficiently justify a reasonable person in believing that the vehicle contained contraband or some evidence of criminal activity. *Id.* ¶ 23. We review these facts and circumstances through the standpoint of an objectively reasonable officer, who "may rely on their law-enforcement training and experience to make inferences that might evade an untrained civilian." *Id.* "[P]robable cause does not require an officer to rule out any innocent explanations for suspicious facts." *Id.* ¶ 24.

¶ 18    Here, Womack testified that at 9:30 p.m., he observed a man carrying a backpack approach another man who had just used an ATM. They interacted for 15 to 20 seconds and engaged in two

6

quick, consecutive handshakes and parted ways. Womack had nine years of experience as an officer and had been specifically trained in drug interactions. During his tenure as an officer, he had the opportunity to personally witness over 50 hand-to-hand drug transfers. Based on that training and experience, he testified that interactions like the one he observed defendant engage in indicated a hand-to-hand drug transfer. Upon approaching the SUV that defendant was riding in, Womack observed defendant making furtive movements and reach into the backseat. Giglio observed defendant holding a small black scale which he appeared to hide behind the driver's seat.

¶ 19 Defendant argues that neither a single drug transaction nor furtive movements are sufficient to establish probable cause to search the SUV. It is true that, without more, courts have been likely to find that no probable cause existed to search. See *People v. Trisby*, 2013 IL App (1st) 112552, ¶ 17 ("probable cause is not established by a single hand-to-hand transaction involving an unidentified object together with a few furtive hand movements toward a pants pocket"). However, furtive movements may constitute probable cause for a search when invested with other circumstances that tend to establish probable cause and instill the movements with more significance. *People v. Smith*, 2015 IL App (1st) 131307, ¶ 29. Where officers observed furtive motions indicating that defendant was attempting to obscure something in the backseat and observed the specific item that was being hidden, a digital scale, such movements are significant to the calculation of probable cause.

¶ 20 Defendant's argument that Giglio's testimony regarding observing the scale is implausible is unavailing. The jury heard Giglio's testimony and defense counsel's arguments against the circumstances of observing the scale and Giglio's credibility and chose to convict defendant. It is the responsibility of the jury to resolve any conflicts in testimony and weigh the evidence presented to it. *People v. Jackson*, 2020 IL 124112, ¶ 64. "[A] reviewing court will not substitute its judgment

7

for that of the trier of fact on issues involving the weight of the evidence or the credibility of witnesses." *Id.* Based on the consistency between Giglio and Womack's testimony, we cannot say that no reasonable trier of fact would be able to find Giglio's testimony credible.

¶ 21 Further, witnessing a person engage in what a reasonable officer would conclude was a drug interaction minutes before seeing the same person make furtive movements to hide an object from officers during a traffic stop is significant to the determination of probable cause to search the vehicle. Nothing about defendant entering a residence before getting into the SUV diminishes that fact. Even without the testimony regarding the prior suspected drug transaction, a motion to suppress was unlikely to succeed in this case based on Giglio's plain view observations of the digital scale under these circumstances. See *People v. Brown*, 356 Ill. App. 3d 1088, 1090 (2005) (officer observing an electric scale and white powdery substance on the front seat of a vehicle constituted probable cause to arrest defendant for possession of a controlled substance) (*abrogated on other grounds by People v. Allen*, 222 Ill. 2d 340, 355 (2006)). Based on the totality of the circumstances, it is unlikely that defendant's unargued motion to suppress would have been granted. Where defendant cannot establish that the unargued motion to suppress would have been meritorious, his claim of ineffective assistance of counsel fails.

¶ 22                                   III. CONCLUSION

¶ 23 The judgment of the circuit court of Du Page County is affirmed.

¶ 24 Affirmed.